**WHEATLAND IRRIGATION DISTRICT, Wheatland, Wyoming, Appellant (Contestant-Appellant below),**

**v.**

**PIONEER CANAL CO., Laramie, Wyoming, Appellee (Contestee-Appellee below).**

**No. 3756.**

Supreme Court of Wyoming.

Jan. 26, 1970.

Wm. Jones, of Jones, Jones & Vines, Wheatland, for appellant.

George J. Millett of Pence & Millett, Gordon W. Davis, of Davis & Costin, Laramie, for appellee.

James E. Barrett, Atty. Gen., Jack R. Gage, Special Asst. Atty. Gen., Cheyenne, for State Bd. of Control as amicus curiae.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Chief Justice GRAY delivered the opinion of the court.

In the year 1964 Wheatland Irrigation District, pursuant to § 41–48, W.S.1957, and as a junior appropriator and contestant, commenced two proceedings before the State Board of Control, seeking a declaration of partial abandonment of certain adjudicated direct-flow and storage water rights owned by Pioneer Canal Co. By agreement of the parties and the board, the two proceedings were consolidated for hearing; were to be heard by the board; and came on to be heard on August 15, 16, and 17, 1966, and on November 14 and 15, 1966. Thereafter the board entered separate orders denying the relief sought. The contestant thereupon, in March and July 1967, filed its petitions in the District Court of Albany County, Wyoming, requesting the court to hold a hearing de novo on the decisions rendered by the board as provided in § 41–53, W.S.1957; and after certain preliminary procedural matters were presented to the court, about which more will be said, the court entered its order affirming in all respects the orders entered by the board. This appeal followed. For convenience and better understanding we will separately discuss the matters pertaining to each of the proceedings before the board and the contentions of the parties with respect thereto.

## THE DIRECT-FLOW RIGHTS OF PIONEER CANAL CO.

It is undisputed that Pioneer is the owner of an adjudicated direct-flow water right out of the Laramie River under Stream Priority Number 6, with priority date of April 19, 1879, in the amount of 71.43 cfs for irrigation of some 49,038 acres of certain specifically described land by means of its Pioneer Canal. It is also the owner of an adjudicated direct-flow water right out of the same stream under Stream Priority Number 25, with priority date of October 1, 1884, in the amount of 210.48 cfs for irrigation of the same lands described under Priority Number 6 and by means of the same canal. The contestant by its amended petition to the board levels its entire attack on the appropriation under Priority Number 25.

Indulging in the liberality accorded pleadings before administrative agencies, Yentzer v. Hemenway, Wyo., 440 P.2d 7, 10, rehearing denied 441 P.2d 320; Glenn v. Board of County Commissioners, Sheridan County, Wyo., 440 P.2d 1, 4, contestant

by its amended petition concerning these rights, alleges in substance that for a period of five years prior to May 21, 1964, the water under Pioneer's rights had been beneficially applied to no more than 7,915 acres of the 49,030 acres of the lands for which the water had been appropriated; that of the 7,915 acres irrigated 5,000.1 acres were attributable to the water appropriated under Stream Priority Number 6 for 71.43 cfs and 2,914.9 acres were attributable to the appropriation under Stream Priority Number 25; that Pioneer, under Stream Priority Number 25, had in the past demanded and received and would continue to demand quantities of water under Priority Number 25 in excess of one cfs for each 70 acres of the lands irrigated thereunder; that contestant was the owner under Permit Number 1724 of a storage right for Wheatland Reservoir Number 2 in the amount of 98,934 acre feet of water from the Laramie River with a priority date of January 29, 1898; and that as a junior appropriator its right had been damaged by Pioneer's demands and would continue to be damaged if such demands were satisfied by the regulatory authorities. It was prayed that the board enter its order declaring that Pioneer has abandoned 168.84 cfs of its right under Stream Priority Number 25.

In preparing for the hearing the contestant, as disclosed by the record, sought permission from Pioneer to enter upon the lands involved for purposes of inspection. Such permission was refused and thereafter contestant sought the aid of the board to force Pioneer to submit to such discovery. Contestant was advised, however, that the board was without statutory authority to grant such relief and that the power of enforcing discovery as set forth in the Wyoming Administrative Procedure Act, ch. 108, § 7, S.L. of Wyoming, 1965 (§ 9–276.25, W.S.1957, 1969 Cum.Supp.), was not then effective so far as the powers of the board were concerned in the proceeding. Contestant also made effort to obtain inspection of Pioneer's corporate records for the asserted purpose of determining "the number of stockholders, total acreage and description of lands legally entitled to be irrigated with water diverted under such priority," and that too was denied.

Notwithstanding such adversity, contestant in the hearing before the board undertook to prove its theory of the case. For purposes here we deem it unnecessary to do more than set forth a brief summary of the evidence adduced. Contestant's principal witness was Mr. Frank Luers, a professional engineer and land surveyor, who had made an extensive study of the subject matter to determine the acreage that had been irrigated for the period in question under Pioneer's rights. In making such study the witness gathered certain material from the United States Geological Survey which included prints of aerial photographs taken vertically in the year 1947 and used in its initial mapping programs, prints of oblique aerial photographs taken in August 1961, and maps and other underlying material pertaining to the area being studied. In addition, the witness made visual inspection of the lands and irrigation facilities to the extent possible from adjoining roads and also obtained evidence from public records of the ownership of the lands within the area. Most of the material so gathered was admitted in evidence, and based upon such material and other available information the witness then prepared maps and plats showing in detail the acreage in the area which he determined to have been irrigated or non-irrigated under Pioneer's rights and gave it as his opinion that of the total acreage involved, only 7,909 acres were irrigated. To a large extent the opinion was based upon interpretation of the aerial photographs in that the variance in color was said to reflect irrigation or nonirrigation of the lands in question. There was other testimony based on estimates tending to show that the irrigated acreage did not exceed some 7,500 acres. On the other hand, there was some showing made by Pioneer principally through use of affidavits admitted over contestant's objection that

water under its rights had been beneficially applied to some 15,000 acres of land.

In disposing of the matter the board in its order denying the relief sought made Findings of Fact and Conclusions of Law as follows:

### "FINDINGS OF FACT °

"1. The Wheatland Irrigation District is the sole owner of the Wyoming Development Company's No. Two Reservoir storing water from the Laramie River in the amount of 98,934 acre-feet under Permit No. 1724 with priority of January 29, 1898, and would be benefited by the abandonment of a portion of the appropriation of water from the Laramie River through the Pioneer Canal, Second Appropriation, under Stream Priority No. 25, with priority of October 1, 1884;

"2. The District Court Decree of the First Judicial District, Laramie County, Wyoming, dated December 27, 1912, established the water rights from the natural flow of the Laramie River through the Pioneer Canal in the name of Pioneer Canal Company of Albany County, Wyoming, as First,—Stream Priority No. 6 with priority date of April 19, 1879 in the amount of 71.43 cubic feet of water per second for the direct irrigation of 49,030 acres of land and Second,—Stream Priority No. 25 with priority date of October 1, 1884 in the amount of 210.48 cubic feet of water per second for the direct irrigation of the same 49,030 acres of land. (The total appropriation under both priorities is 281.91 cubic feet per second for the 49,030 acres, even though under the statutory rate of not to exceed one cubic foot of water per second of time for each seventy acres of land irrigated as enacted in 1891, the total of the two appropriations (281.91 cubic feet per second) would be sufficient for not more than 19,733.7 acres of land.)

"3. That some of the lands claimed to have been abandoned were shown to have been irrigated during the five year period prior to the filing of the petition and that the evidence presented failed to provide conclusive evidence as to which lands had not received water under this appropriation.

"4. Although the Board feels that some of the lands described in the appropriation have not been irrigated during the five year period, attorneys for contestee did not grant contestant entry upon lands claimed to be non-irrigated, and consequently the evidence presented was inconclusive as to which lands had not been irrigated.

### "CONCLUSIONS OF LAW

"1. The Board of Control has jurisdiction over the subject matter and parties, to hear, consider and act upon this petition for abandonment as herein filed.

"2. Contestant, Wheatland Irrigation District, has standing to bring this petition.

"3. That although Pioneer Canal Company may have abandoned the right to the use of a portion of the appropriation of water from the Laramie River under Stream Priority No. 25 with priority date of October 1, 1884, the showings and evidence presented is not sufficiently clear for the Board of Control to make an actual determination of lands on which use of water under said appropriation has not been made during the five years prior to the filing of the petition for abandonment."

Concerning the board's decision, the contestant contends that the findings of the board were not supported by substantial evidence and were contrary to law. Inasmuch as the district court limited its consideration to the record made before the board, we treat the contention as raising the question of whether or not contestant has demonstrated error in this respect on the part of the board and on the part of the district court in approving of the board's findings and conclusions.

We hold there is no merit in the contention that the findings of fact are not supported by substantial evidence. In the first instance, it is apparent the board's findings adverse to contestant on questions of fact were greatly influenced by the almost total lack of direct evidence tending more accurately to show the extent of the irrigated and nonirrigated acreage which might have been obtained by entering upon, inspecting, and measuring the lands being irrigated. Although contestant does not concede that the lack of such evidence was pivotal, it does concede that the weight of the testimony it did adduce bearing upon the issue, and particularly that of its witness Luers, was a matter for the board to determine in the first instance. In addition, of course, we have long adhered to the rule that adjudicated water rights will not be set aside unless justified by clear and convincing evidence, White v. Wheatland Irrigation District, Wyo., 413 P.2d 252, 259. In this connection we have carefully reviewed the evidence pertaining to this phase of the case, which has heretofore been summarized, and we are not persuaded the board or the district court erred in holding, in substance, that contestant in that respect had failed sufficiently to prove its claim. In fact, contestant presents little argument to the contrary and relies principally on a question of law.

In advancing its argument on the question of law, contestant recognizes that beneficial use during the period involved in an abandonment proceeding is the criteria by which the rights of the parties are to be determined but then says that even though beneficial use is shown it will not forestall partial abandonment of a water right to the extent that such use is illegal. That much can be conceded for purposes of its argument. The difficulty is in the application of the generalization to the circumstances disclosed by the record or judicially noticed.

The argument is premised upon the proposition that there was uncontradicted evidence establishing that the number of outstanding shares of Pioneer capital stock with water rights attached varied between 7,000 and 7,500 shares; that each share according to the terms of the certificate entitled the holder to 1/70th of one cfs of water for each acre described in the certificate; that each share of such stock was the equivalent of one acre of irrigated land; that beneficial use by the stockholders was thus limited in quantity and confined to the lands represented by and described in the stock certificate; and consequently any use in contravention of the relationship of Pioneer with its stockholders and for more than 7,500 acres was illegal and abandoned as a matter of law.

As authority for its contention that both beneficial use and ownership of Pioneer's stock by landowners were essential to the acquisition of a water right through Pioneer, the contestant relies almost entirely upon State v. Laramie Rivers Co., 59 Wyo. 9, 136 P.2d 487. We do not agree that what this court held in that case supports the contention. The case involved an action brought by several plaintiffs on their own behalf and others similarly situated against Pioneer and Laramie Rivers Co. for mismanagement in connection with the joint operation of the irrigation systems of each company. The case necessitated a rather extensive discussion of the rights of plaintiffs and others as water users and it is true that in connection with the acquisition of rights by landowners within the area covered by Pioneer's rights it was said:

"* * * Some acts of theirs were essential, including the application of the water to a beneficial purpose, and making an application to or purchase from the Pioneer Canal Company for the water right. * * *" 136 P.2d at 499.

It seems apparent, however, from the language used that purchase of Pioneer stock was not said to be essential to acquire a right to use the water. If there could be any doubt of what was intended by the statement, that is removed by the comment at 136 P.2d 501 that some surplus water

was still available under the right here attacked and the further comment on the same page that "it would seem to be clearly in the interest of the Pioneer Canal Company to permit *the use* of such surplus so that no abandonment thereof may be claimed against it" (emphasis supplied), which is indicated might be done on a temporary basis. In addition, the case discloses that Pioneer had theretofore permanently disposed of a small portion of its right by deed. Contestant also relies upon Oppenlander v. Left-Hand Ditch Co., 18 Colo. 142, 31 P. 854, but that case is not particularly helpful on the question before us.

In meeting contestant's argument, Pioneer, in addition to pointing out State v. Laramie Rivers Co., supra, fails to support the argument, asserts it was held in Laramie Rivers Co. v. Watson, 69 Wyo. 333, 241 P.2d 1080, that ownership of stock was not essential to put water to beneficial use. It is most doubtful the case goes that far. In the first instance, the summarization of the holdings made, 241 P.2d at 1095, discloses no such holding. Secondly, the discussion pertinent to the question, 241 P. 2d at 1092, was largely dictum. True, after reiterating what was said in State v. Laramie Rivers Co. with respect to available surplus water, it was said, "If we may suggest a proper method [for disposing of such surplus], it should be sold, if at all, not by way of stock held by the Laramie Rivers Company but by Pioneer Canal Company itself." However, the Pioneer stock held by Laramie Rivers had no water rights attached and that, no doubt, prompted the suggested exclusion of the sale of such stock. No suggestion was made as to just how Pioneer was to make sale of the water on a permanent basis. Assuming, however, that the language might be interpreted to indicate that Pioneer at that time could have disposed of a portion of the water right here in question other than by sale of stock to which a right was atttached, there is no substantial evidence that it has done so. Consequently, as we view it, Laramie Rivers Co. v. Watson does not, as Pioneer

argues, furnish a ready answer to contestant's argument.

In concluding our remarks on what appears to be a rather novel question of law, we are not unaware of the fact that its solution may be of importance in this and future litigation involving water rights. Nevertheless, as we have shown above, the pros and cons of the question are not supported by cogent argument; and inasmuch as we are persuaded that the order of the district court insofar as it pertains to the direct-flow right under Priority Number 25 must be vacated for a procedural error, we will not now decide such question.

## THE RESERVOIR RIGHT

It is undisputed that Pioneer is the owner of an adjudicated right for storage in the Pioneer Reservoir (Sodergreen Lake) of 1,000 acre feet of water out of the Laramie River under Stream Priority Number 6, with priority date of April 19, 1879.

Contestant in its amended petition filed with the board alleged, in substance, its ownership of certain water rights junior to Pioneer's; that Pioneer Reservoir for more than five years last past has been and is presently incapable of storing more than 320 acre feet of water; that not more than 320 acre feet has been stored therein and applied to beneficial use for such period; that Pioneer has demanded and received and will continue to demand and receive 1,000 acre feet of water for storage to the detriment and injury of contestant; and prays that the board declare an abandonment of 680 acre feet of Pioneer's storage right.

In disposing of the matter the board in its order, inter alia, found that contestant would be benefited by abandonment of a portion of the storage right; that the present actual available storage capacity of Pioneer Reservoir was 443 acre feet of water; that physical storage has not exceeded 443 acre feet of water for the past five years; that there has been sufficient water under the priority to have furnished 1,000 acre feet for storage; and that Pioneer in some of the years involved utilized

more water under the appropriation than the physical capacity of a single filling would have permitted. The board also made the following pertinent conclusions of law:

"3. Contestee, Pioneer Canal Co., has abandoned the right to the use of a portion of Appropriation No. 6 available for storage in the Pioneer Reservoir.

"4. Contestee, Pioneer Canal Co., should be allowed to beneficially use that amount of water under the Pioneer Reservoir portion of Appropriation No. 6 which it has historically used beneficially so long as it does not entail more than one filling of the Pioneer Reservoir.

"5. Because it has been found that the Pioneer Canal Co. has, under the Pioneer Reservoir portion of Appropriation No. 6, during some of the five years just prior to the filing of this petition, utilized more water than the physical capacity of a single filling of Pioneer Reservoir would permit, they should be allowed an opportunity to increase the usable storage capacity of the Pioneer Reservoir up to 1000 acre feet within a reasonable time."

It then ordered that Pioneer should have until May 1, 1968, to enlarge the reservoir capacity and if such enlargement were not completed by that date "the appropriation for the Pioneer Reservoir in the amount of the remaining 557 acre-feet BE AND IS HEREBY DECLARED ABANDONED."

The district court in affirming the order of the board extended the completion date of any enlargement of the reservoir for a period of 26 months after "final determination" of the matter. In presenting the matter here, contestant does not challenge the finding of the board relating to storage capacity of the reservoir but argues that the board exceeded its powers by fixing a time within which Pioneer might enlarge the reservoir to provide storage to the full extent of its right and that the district court also erred in this respect.

In this connection the record discloses that the storage right of Pioneer was adjudicated by decree of the district court in the year 1912. Although it has been suggested that the reservoir at that time did not have storage capacity of 1,000 acre feet of water, we must accept as true the fact that it had been constructed and had such capacity, Sturgeon v. Brooks, 73 Wyo. 436, 281 P.2d 675, 677. See also Laramie Rivers Co. v. Le Vasseur, 65 Wyo. 414, 202 P.2d 680, 691. In State v. Laramie Rivers Co., 59 Wyo. 9, 136 P.2d 487, 489, it was said that such fact was shown by the record. Nevertheless, over the years and by 1932 Pioneer, because of a seepage problem, silting, and some interference as the result of the construction of a highway across it, was not storing water up to its initial capacity and had commenced taking its storage water according to the witness L. J. Holliday, Pioneer manager from 1932 to 1963, "at whatever rate we might think we could use it at best advantage," which in volume measured 15 to 20 cfs and such manner of taking was continued until the appropriation for 1,000 acre feet had been satisfied. In 1935 or 1936, according to Holliday, the state engineer through the water commissioner advised Pioneer to discontinue such practice and "take our water from the river as fast as we could until we had got our 1,000 acre feet." Later, however, because of the seepage problem the state engineer told them to go back to their former practice. This was done and there is no evidence that Pioneer did anything to alleviate its problem prior to the time this proceeding was commenced.

From the foregoing circumstances it can be seen that the practice over the years, in effect, was to use the reservoir as a conduit for water from the natural flow of the river to the lands irrigated in the amount of 557 acre feet representing the excess of the capacity of the reservoir. The critical question posed in this connection is whether or not Pioneer, under its appropriation, was entitled to more than one filling of the reservoir each year up to its existing capacity.

As disclosed by its findings and conclusions, the board concluded it was not, and by its order the board held that Pioneer's

storage right was limited to 443 acre feet. Neither the board nor the contestant points to applicable statutory authority specifically limiting a storage right to one filling each year up to reservoir capacity. It is obvious, however, the board under general and statutory law pertaining to the appropriation of water has construed the law to so limit the right. While such interpretation is not binding on us, we are nevertheless impressed with the reasonableness of the board's view. In the first instance, the effect of a contrary holding, as we have indicated above, graphically depicts the harmful result of Pioneer's practice to junior direct-flow and storage appropriators at the times there is insufficient water in the stream also to satisfy their rights, which as shown is normally the case. In addition, the view of the board is buttressed by authority under general law. In Windsor Reservoir & Canal Co. v. Lake Supply Ditch Co., 44 Colo. 214, 98 P. 729, 733, the court said:

"* * * A double filling in effect would give two priorities of the same date and of the same capacity to the same reservoir, on the same single appropriation, which is impossible in fact and in law, and, if allowed, would violate the fundamental doctrine of the law of appropriation—he who is first in time is first in right—by making a junior superior to a senior reservoir appropriator. * * *"

Although the case involved a dispute concerning priority of reservoir rights, the rationale is applicable here; and although the court in its discussion preceding the pronouncement made reference to general statutes pertaining to capacity, such as the provision in our statute which was in effect at the time Pioneer's right was adjudicated requiring information from which the "contents of the reservoir or basin may be approximately determined," § 737, W.C. S.1910—which we mention only as reflecting general policy—the case has been recognized as general authority on the subject. The Supreme Court of Montana, in Federal Land Bank v. Morris, 112 Mont. 445, 116

P.2d 1007, subscribed to the same view. 2 Kinney on Irrigation and Water Rights, § 845, p. 1484 (2d Ed.), has this to say:

"* * * As in the case with other rights acquired under the Arid Region Doctrine of appropriation, the rule of priority governs, and it is held that the reservoir having the prior right is entitled to fill the same first from the flow of the stream to the full extent of the capacity of the appropriation made therefor. But having once during any one season filled such reservoir, a later appropriation or a subsequent reservoir may take the surplus of the water flowing in the stream, after the prior reservoir has been once filled. * * *"

The only justification for the practice offered by Pioneer was that the state engineer and water commissioner had acquiesced in it since 1936, and that primarily was offered in support of the privilege granted to enlarge the reservoir. For the reasons stated we hold the board correctly determined that Pioneer had abandoned its right to divert more than 443 acre feet each year for storage in Pioneer reservoir.

Turning to the extension of time for enlargement of the reservoir to restore its initial capacity, we think little need be said. The board by its brief amicus curiae, confesses that it erred in this respect. We agree. In Sturgeon v. Brooks, 73 Wyo. 436, 281 P.2d 675, this court was confronted with a situation wherein the owner of a storage right had for a period of almost 29 years failed to repair the dam of a reservoir which had been washed out. He then undertook to repair and did repair the dam and made beneficial use of the stored water. In 1953, however, the dam was again washed out and about the time he once more undertook to repair it plaintiffs, as junior appropriators, brought suit in the district court to enjoin the owner from repairing and reconstructing the reservoir. One of the questions dealt with in the case was whether or not the owner had abandoned his storage right because of the prolonged disuse of the reservoir. We held he had not

for the reason no formal declaration of abandonment had theretofore been obtained from the board or the district court. It was said, however, "that if the action for forfeiture had been brought before Brooks [defendant] put the reservoir again into use, the court would have been justified, if not constrained, to declare a forfeiture," 281 P.2d at 684. Inasmuch as there has been no change in the statute relating to the matter since that time, see § 41–47, W.S. 1957, the rationale of the case is particularly persuasive here, and as indicated above we hold the board and the district court erred in granting Pioneer additional time within which to enlarge its reservoir.

### THE PROCEDURAL ERROR

We have heretofore set forth the efforts of contestant to obtain the right of discovery at the time the proceeding was pending before the board and the board's ruling that it was without authority to order discovery. Both parties acquiesced, and for such reason the board's ruling is not before us. However, when the proceedings were brought to the district court by contestant's petition for a hearing de novo as provided in § 41–53, W.S.1957, the contestant filed a motion for an order of the court requiring Pioneer to produce for inspection the company's files pertaining to an application for loan to the Wyoming Resource Board and Farmers Home Administration, the company's minute book, and its stock book; also, for an order requiring Pioneer to grant entry upon the lands irrigated under its rights for purposes of photographing and inspection. In the affidavit of Mr. Jones supporting the motion it is stated that Pioneer has access to the lands in question and inspection of the lands and the corporate records will disclose the extent of the lands irrigated and "whether or not irrigation water has been applied for beneficial purposes." The affidavit was not controverted by Pioneer.

Thereafter the court denied the motion and gave as its reason the fact that contestant had initiated the proceedings before the board rather than the district court,

well knowing the board was without power to order discovery; and having made such election contestant "should not be permitted at this late date to obtain and present to the Court evidence * * * which was not presented to the board of control, nor to further delay the proceedings by reopening the matter before the board of control to hear such evidence."

Contestant contends it was prejudicial error for the district court to deny discovery of evidence which it so "desperately needed." Underlying the claim is the question of whether or not the court's review was controlled by § 41–53, W.S.1957, providing for trial de novo which ordinarily means "it is on the same footing as though it had originated in the district court," State ex rel. Suchta v. District Court of Sheridan County, 74 Wyo. 48, 283 P.2d 1023, 1024; or was it controlled by the Administrative Procedure Act, ch. 108, S.L. of Wyoming, 1965 (§§ 9–276.19—9–276.33, W.S.1957, 1969 Cum.Supp.), and our Rule 72.1, W.R.C.P., prescribing the method for court review of final orders of administrative agencies.

With respect to this question, contestant has taken inconsistent positions. Initially in bringing the matter to the court it did not file the petition for review contemplated by Rule 72.1(f), which requires a concise statement of "the ground or grounds upon which petitioner contends he is entitled to relief." Secondly, although the record made before the board was filed in keeping with an order of the court, the procedure set forth in Rule 72.1(g) for the filing of the record in the court was not followed. In arguing the question of procedure before the district court initially, contestant took the position it was entitled to a trial de novo and the Administrative Procedure Act and our rule were not applicable. On the other hand, Pioneer argued to the contrary and the district court gave every indication that it accepted that view. When the matter arrived here, however, contestant, although still insisting it was erroneously deprived of the right of discovery, now asserts the

act and our rule were applicable. Pioneer's position has not changed but it insists in any event the district court's ruling was not error. The board, as amicus curiae, takes the view that contestant's initial position in the district court was the proper one and the court erred in its ruling.

Notwithstanding the inconsistencies of contestant, we feel the circumstances of this case are such that we are impelled to dispose of the question in order to assure the matter is fairly and fully litigated below. In doing so we realize, of course, that what we do here will make little contribution to the body of the law of this state for the reason it is inconceivable that the Administrative Procedure Act, which became effective on January 1, 1966, with the exception to the general repealing clause of "pending proceedings," § 17, ch. 108, S.L. of Wyoming, 1965 (§ 9–276.33, W.S.1957, 1969 Cum.Supp., note), would not now be applicable to any agency proceeding. Thus there is little need for extensive discussion of the narrow point.

█ It is arguable, of course, that the exception of the act applied only to pending proceedings which had not then been determined by the agency and did not embrace a procedural rule for court review which this court was authorized to prescribe and did prescribe with an effective date of March 21, 1966. We have heretofore, however, regarded the review by the courts of decisions of the board as a continuation of those proceedings, Anita Ditch Company v. Turner, Wyo., 389 P.2d 1018, 1021, which would seem to negative to a large extent any argument that the legislature did not intend the exclusion to apply to the procedure for court review as then prescribed by the statute. Additionally, § 8–21, W.S.1957, relating to the effect of amendatory or repealing acts, among other things, provides when such act "relates to the remedy [which the act here does], it shall not affect pending * * * proceedings, unless so expressed." This court, in effect, adopted the same rule long prior to the general statute, Lee v. Cook, 1 Wyo. 413, 417 (1878); and in State ex rel. Lynch v. Board of County Commissioners, 75 Wyo. 435, 296 P.2d 986, 988, it was said that "Retrospective legislation is not favored" and the same concept applies to rules and regulations. For such reasons we hold the Administrative Procedure Act and our Rule 72.1 were not applicable and contestant was entitled to a trial de novo in the district court.

Even so, Pioneer asserts the district court did not err in limiting its review to the record made before the board. We do not agree. Pioneer relies on several previous decisions of this court dealing generally with the scope of a de novo review and heavily relies upon Rayburne v. Queen, 78 Wyo. 359, 326 P.2d 1108. We fear counsel for Pioneer is under some misapprehension as to the holding of the majority opinion in that case. After reciting that findings of the land board should be approved by the court if supported by substantial evidence which might consist of competent testimony before the board or adduced in the trial before the court, 326 P.2d at 1109, the court went on to say that the transcript of the testimony before the board would serve "as *one of the bases* for its [the court's] judgment." (Emphasis supplied.) 326 P.2d at 1112. The rationale was again followed in J. Ray McDermott & Co. v. Hudson, Wyo., 348 P.2d 73, 76. With respect to the function of the court upon a review of an order of the board of control under § 41–53, and prior to the year 1966, wherein the parties had stipulated that the evidence taken at the hearings below should be considered by the trial court, this court, in Ward v. Yoder, Wyo., 355 P.2d 371, 374, rehearing denied 357 P.2d 180, said:

"* * * The trial court was not in a strait jacket which required it to accept without question any of the testimony as fact. It was the sole judge of the credibility of the witnesses and was entitled to interpret the evidence. This included not only an evaluation of what was said by the witnesses who appeared in person before the court but also an analy-

sis of what had taken place at the previous hearings."

See also Yentzer v. Hemenway, Wyo., 440 P.2d 7, rehearing denied 441 P.2d 320, which involved an abandonment proceeding wherein the parties had stipulated the case was to be heard and determined by the trial court solely upon the record made before the board. Here there was no such stipulation of the parties and the district court erred in its initial holding to the effect that its review would be confined to the board's record.

In view of our holding that either party was entitled to adduce material evidence at the hearing in the trial court, it becomes necessary to consider the ruling made by the trial court on contestant's motion for an order of discovery. The motion invokes relief under Rule 34(a), W.R.C.P. relating to the inspection of documents and lands in the possession or control of the adverse party. The only reason stated by the court for denying it was, as related above, that contestant in order to obtain such relief should have commenced its proceeding in the district court rather than with the board.

■ While it is true we have always held the courts have concurrent jurisdiction with the board in abandonment proceedings, we went to some length in Louth v. Kaser, Wyo., 364 P.2d 96, to point out the advisability of commencing such proceedings before the board because of the peculiar knowledge and expertise of its members in dealing with the technicalities involved. For us to subscribe to the reasoning of the trial court would constitute a grave departure from what this court was endeavoring to achieve. In School Districts Nos. 2, 3, 6, 9, and 10, in Campbell County v. Cook, Wyo., 424 P.2d 751, 756, we also cautioned that a narrow view should not be taken by the courts of a litigant's election of available remedies in proceedings involving agency action.

■ Thus we are constrained to hold that the trial court's ruling cannot be sustained on such basis and neither do we think the ruling can be sustained on any other basis in the light of what was then before the court. We have previously discussed contestant's theory of its attack on the direct-flow right, which in part is grounded upon what the records of Pioneer should reflect. Certainly the information sought was relevant to the subject matter of the proceeding, a basic requirement of the rule. Although Pioneer argues that even so such information would not be helpful to disposition of the case for the reason that the manner in which Pioneer distributed its water was an internal matter as long as the water was put to beneficial use on the lands embraced within the right, we fail to see why that is so. The manner by which the water users acquired rights from Pioneer was an important issue in the proceeding, and the argument that such users were not subject to the 1-to-70 rule as the outer limitation on use would seem to overlook the decree of 1912 establishing the right, and of which we take judicial notice, wherein it was provided that "all appropriations involved in this proceeding" were made subject to the rule. With respect to inspection of the lands, the comments of the board in its order amply demonstrate the importance of such evidence in an abandonment proceeding. We hold the trial court abused its discretion in denying contestant's motion—see Lake De Smet Reservoir Company v. Kaufmann, 75 Wyo. 87, 292 P.2d 482, 487—and contestant was prejudiced thereby.

Once discovery is had and it appears to the trial court that material and admissible evidence resulting therefrom can be adduced by contestant in further proceedings, we see no reason, if the court so desires, why it should not remand the proceeding involving Pioneer's rights under Stream Priority Number 25 to the board for the taking of such evidence and obtain the benefit of its findings and conclusions with respect thereto. Laramie Rivers Co. v. LeVasseur, 65 Wyo. 414, 202 P.2d 680, 695.

The order of the district court affirming the board's "Order Record No. 17" relating to Pioneer's appropriation under Stream Priority Number 25 is vacated as having been prematurely entered and the case remanded for further proceedings consistent with this opinion. The order of the district court affirming the board's "Order Record No. 17" relating to the reservoir right is vacated insofar as it granted to Pioneer an extension of time within which to enlarge its reservoir and is affirmed in all other respects.