**WHEATLAND IRRIGATION DISTRICT,**
Appellant (Petitioner),

v.

**LARAMIE RIVERS COMPANY and The University of Wyoming, and the Wyoming State Board of Control, Appellees (Respondents).**

No. 5780.

Supreme Court of Wyoming.

Feb. 18, 1983.

William R. Jones and John P. McBride of Jones, Jones, Vines & Hunkins, Wheatland, for appellant.

Horace M. MacMillan, II of Pence & MacMillan, Laramie, for appellee Laramie Rivers Co.

George A. Gould, Laramie, for appellee The University of Wyoming.

Steven F. Freudenthal, Atty. Gen., Walter Perry, III, Sr. Asst. Atty. Gen., and Lawrence J. Wolfe, Asst. Atty. Gen., for appellee Wyoming State Bd. of Control.

Before ROONEY, C.J.,* and RAPER, THOMAS, ROSE ** and BROWN, JJ.

ROSE, Justice.

The appellant, Wheatland Irrigation District (sometimes referred to as Wheatland), filed a petition with the Board of Control seeking abandonment of 41,100 of the 68,-500 acre feet of water appropriated under two reservoir permits issued to the appellee Laramie Rivers Company (sometimes referred to as Laramie Rivers) for the Lake Hattie reservoir near Laramie, Wyoming. The sources of supply for Lake Hattie are

---

* Chief Justice since January 1, 1983.

** Chief Justice at time of argument.

the Laramie and the Little Laramie Rivers and, if the petition were to be granted and the Board of Control's order upheld by the courts, appellee Laramie Rivers would be left with a 27,400 acre-foot capacity in the reservoir. The appellant, owner of Wheatland Reservoir No. 3 which receives water from the same water sources as does Lake Hattie, holds a permit junior to those of the appellee Laramie Rivers. It is the appellant's theory that the 41,100 acre feet should be declared abandoned by reason of the directives contained in § 41–3–401(a), W.S.1977,[1] on the ground that the appellee had failed

> "to use the water therefrom for the beneficial purposes for which it was appropriated * * * during any five (5) successive years * * *." § 41–3–401(a), W.S.1977, supra n. 1.

As indicated supra n. 1, this section of the statute goes on to provide that if the holder of the appropriation has not used the water for this period of time,

1. Section 41–3–401(a), W.S.1977 provides:

   > "(a) Where the holder of an appropriation of water from a surface, underground or reservoir water source fails, either intentionally or unintentionally, to use the water therefrom for the beneficial purposes for which it was appropriated, whether under an adjudicated or unadjudicated right, during any five (5) successive years, he is considered as having abandoned the water right and shall forfeit all water rights and privileges appurtenant thereto. Notwithstanding any provision in this section to the contrary, the holder of an appropriation for the diversion and storage of water in a reservoir, from which water or a portion thereof has not yet been beneficially used for the purposes for which appropriated, may apply to the board of control for an extension of time not to exceed five (5) years, within which to use water therefrom for the beneficial purposes for which it was appropriated. In the application the holder shall demonstrate the exercise of due diligence toward the utilization of the appropriation, and that notwithstanding the exercise of due diligence, reasonable cause exists for nonuse. Reasonable cause includes but is not limited to delay due to court or administrative proceedings, time required in planning, developing, financing and constructing projects for the application of stored water to beneficial use which require in excess of five (5) years to complete, delay due to requirement of

> "* * * * he is considered as having abandoned the water right and shall forfeit all water rights and privileges appurtenant thereto."

The Board of Control denied the petition for the reason that substantial work on the reservoir had been undertaken prior to its filing. In ¶ 7 of its findings of fact the Board said:

> "THAT the petition in this case was filed on May 23, 1980 with the Board of Control, and the contestee, Laramie Rivers Company, was advised of the filing of the petition on June 6, 1980. The contestee argues that it had performed a substantial amount of work to repair the dam by the time the petition was filed and that therefore, the abandonment was not timely filed and should be denied. The Board is persuaded by the facts presented by the contestee and finds that substantial work had been undertaken to repair the dam as set forth in the following paragraphs."[2]

state and federal statutes and rules and regulations thereunder and any other causes beyond the control of the holder of the appropriation. Upon receipt of an application for extension, the board of control shall proceed under the provisions of W.S. 9–276.19 through 9–276.33 [§§ 9–4–101 through 9–4–115] and may grant an extension of time as it finds proper, not to exceed five (5) years, for the application of the appropriated water to the beneficial use for which it was appropriated. A prior grant of extension of time hereunder does not preclude the holder from applying for additional extensions of time, each not to exceed five (5) years, upon similar application and showing. The granting of an extension of time precludes the commencement of an abandonment action against the appropriation during the period of extension."

2. "The following paragraphs" to which ¶ 7 has reference constitute a laundry list of the efforts made by Laramie Rivers commencing February 14, 1980 to borrow money and contact contractors, and finally cause contract work to commence on May 2, 1980. The list shows the dates of construction progress until July 7, 1980 when the dam was complete. The facts enumerated do not show that the water in question was ever put to beneficial use. The reason for this is that beneficial utilization was never accomplished at any time relevant to the issues in this appeal.

In ¶ 6 of the conclusions of law section of its order, the Board held:

"THAT the Board concludes that the abandonment was not promptly asserted in this case and therefore, it must be denied. The contestee, Laramie Rivers Company, had undertaken substantial work to repair and renovate the dam in order that it might store water to its original adjudicated capacity. This renovation work was under way at the time the petition was filed and served upon contestee and substantial progress had been made. The Board concludes that to grant the abandonment would be to deny the contestee the fruits of its efforts to repair the dam and that the forfeiture was not promptly asserted and therefore, must be denied."

The grounds for the Board's refusal of the petition can be capsulized as follows:

The contestee had undertaken substantial work to repair the dam by the time the petition was filed and therefore the filing was not timely.

It is to be noted that the Board did not consider whether the appropriator had or had not failed to use the water for five successive years as contemplated by § 41–3–401(a),[3] and therefore this issue has not been resolved by the Board of Control or presented to the district court for decision. The question may therefore not be considered here. Positions and issues not presented to the district court will not be considered by the Supreme Court. *Wyoming Bank and Trust Company of Buffalo v. Bonham*, Wyo., 606 P.2d 296 (1980).

Wheatland Irrigation District filed a petition for review with the district court and it is from the court's order in favor of Laramie Rivers that Wheatland lodges its appeal here.

The issues which Wheatland assigns for our consideration are these:

3. Paragraph 25 of the findings of fact says: "THAT there was substantial testimony in the record as to the availability or nonavailability of water during the years in question.

"1. DOES UNDERTAKING SUBSTANTIAL WORK TO REPAIR A DAM, PRIOR TO THE FILING OF THE PETITION FOR PARTIAL ABANDONMENT, RENDER THE FILING UNTIMELY?

"2. IS THE UNDERTAKING OF WORK TO REPAIR A DAM AN ACT WHICH LEGALLY PRECLUDES ABANDONMENT, OR IS THE *USE* OF STORED WATER FOR BENEFICIAL PURPOSES, PRIOR TO FILING A PETITION FOR ABANDONMENT, THE ACT WHICH LEGALLY PRECLUDES ABANDONMENT?

"3. IF THE FILING OF PETITION FOR PARTIAL ABANDONMENT IS FOUND TO BE UNTIMELY, DOES THAT FACT ALONE PRECLUDE THE GRANTING OF A PARTIAL ABANDONMENT?

"4. IS THE BOARD OF CONTROL ORDER CORRECT WHEN FOUNDED UPON THE CONCLUSION THAT TO GRANT THE PETITION FOR ABANDONMENT, THE LARAMIE RIVER COMPANY WOULD BE DENIED 'THE FRUITS OF ITS EFFORTS TO REPAIR THE DAM,' (APPROXIMATELY $142,000.00) WHEN THE RESULT OF THE ORDER BASED UPON SUCH CONCLUSION DENIES THE WHEATLAND IRRIGATION DISTRICT THE FRUITS OF ITS EFFORTS EXPENDED ON RESERVOIR NO. 3 (APPROXIMATELY $656,000.00)?"

Condensed, the only question for resolution by this court is:

Does § 41–3–401, W.S.1977 authorize the Board of Control to refuse to declare an abandonment for the reason that the petition for abandonment was filed after repair work was commenced but prior to the application of the questioned Lake Hattie Reservoir waters to a beneficial use?

However, because of the Board's disposition of the matter, this evidence will not be commented upon."

The record in this case shows that a restriction to 27,400 feet of storage has been in effect at Lake Hattie since April 5, 1972 when it was imposed by the State Engineer because of infirmities in the dam. In March of 1980, the state of Wyoming approved a loan to Laramie Rivers so that the dam could be repaired, after which, on May 16, 1980, Laramie Rivers publicly announced its intentions with respect to dam repair and future water storage plans. This was the first Wheatland knew of Laramie Rivers' loan approval and dam improvement plans. One week later, on May 23, the abandonment petition was filed. Two days before the filing of the petition, soil compaction tests had been made and the construction company hired for the repair work was placing fill and proceeding with the construction. By July 7, 1980 the work was substantially complete.

According to the record that is available to this court, the Laramie Rivers Company had not stored water in Lake Hattie, and had not beneficially used any water therefrom in excess of the 27,400 acre-foot limitation from April, 1972 until the time the petition for abandonment was filed on May 23, 1980. In fact, no water was stored or beneficially used above the limitation up to the time of hearing before the Board of Control on February 17, 18 and 19, 1981, nor had any water been stored or used above the limitation when the parties were before the district court on July 1, 1982.

From what we have said we must assume that the water in question here was not in the reservoir at any time which is relevant to this appeal in consequence of which there was no such application of this water to beneficial use and place of use as is contemplated by the appellee's appropriation certificate.

These things being so, we must look to the statute to see whether or not the Board of Control was possessed of the authority to deny Wheatland's petition for partial abandonment on the ground that, at the time of its filing, "substantial work had been undertaken to repair the dam," (¶ 7 of Board's findings of fact) and therefore the petition

was not "promptly asserted" (¶ 6 of conclusions of law).

## THE LAW

### Statutory Construction

We summarized the rules of statutory construction by which this court lives when we said in *Wyoming State Department of Education v. Barber*, Wyo., 649 P.2d 681 (1982):

"* * * First off, it is a well-established principle that in construing a legislative enactment we must, if possible, ascertain the intent of the legislature from the wording of the statute. We are not, however, permitted to assign meaning to a statute which would have the effect of nullifying its operation. *In the Matter of the Injury to Hasser*, Wyo., 647 P.2d 66 (1982); *McGuire v. McGuire*, Wyo., 608 P.2d 1278, 1285 (1980). Also, words utilized in the statute are to be given their plain and ordinary meaning unless otherwise indicated. *Board of County Commissioners of the County of Campbell v. Ridenour*, Wyo., 623 P.2d 1174, 1184 (1981); *Jahn v. Burns*, Wyo., 593 P.2d 828, 830 (1979). Similarly, it is well settled that general principles of statutory construction calculated to assist the court in ascertaining legislative intent are not resorted to unless it can be said that the statute is ambiguous. *Sanches v. Sanches*, Wyo., 626 P.2d 61, 62 (1981); *Matter of North Laramie Land Co.*, Wyo., 605 P.2d 367, 373 (1980)."

We subscribe to these rules in analyzing § 41-3-401(a) as it is applicable to the facts of this case. Particularly we are bound here by the rule of *Sanches v. Sanches*, Wyo., 626 P.2d 61 (1981) and *Matter of North Laramie Land Co.*, Wyo., 605 P.2d 367 (1980), which holds that we will not resort to statutory construction aids where there is no ambiguity in the statute under consideration.

There are no innuendos or double entendres to be found in § 41-3-401(a). The intention of the legislature is there expressed in plain English, leaving no room

whatever for our seeking out any rules of statutory construction except those which direct us to apply the statute according to the plain, ordinary meaning of the words to be found therein. *Board of County Commissioners of the County of Campbell v. Ridenour,* Wyo., 623 P.2d 1174, reh. denied 627 P.2d 163 (1981).

What does the statute say? It says that where the holder of an appropriation of water for a reservoir water source

" * * * *fails * * * to use the water therefrom for the beneficial purposes for which it was appropriated * * *"* (emphasis added)

for a period of five successive years

*"he is considered as having abandoned the water right and SHALL forfeit all water rights and privileges appurtenant thereto."* (All emphasis added.)

This legislative directive amounts to a forfeiture by statute if the facts fit the mandate. It leaves the Board of Control and the courts no room to save an appropriator from an abandonment petition where his water has not been used for the beneficial purposes for which it was appropriated for the "five (5) successive years" contemplated by the statute. The statute says that the appropriation "SHALL" (emphasis added) be declared abandoned in circumstances where the five-year nonuse showing is made even where the failure to make beneficial application of the water is unintentional. The applicable legislative enactments do not envision authority in the Board of Control or the courts to relieve an appropriator from the abandonment statute's violent impact for any of the reasons that the Board utilized in denying Wheatland's petition.

The Board denied the petition on the grounds that contestee, Laramie Rivers, had undertaken "substantial work" (¶ 6 of conclusions of law, supra) to repair the dam when the petition was filed and therefore it was not asserted "promptly." (¶ 6 of con-

clusions of law, supra). But where in the statute can language be found which permits the Board such leeway as will countenance this holding? It simply is not there. The only thing that will save the contestee from the harshness of the abandonment statute's dictate is for Laramie Rivers to be able to show—once nonuse for the statutory period has been established by the contestant—that the water in contest here was not available for application to a beneficial use within the five-year period contemplated by the statute. See § 41–3–401(b), W.S.1977.[4] *State Board of Control v. Johnson Ranches, Inc.,* Wyo., 605 P.2d 367 (1980).

It is clear to this court that the Board of Control did not apply the appropriate rules of law in coming to its conclusions of law, and thus reached an erroneous ultimate decision.

In ¶ 4 of its conclusions of law, the Board's order says:

"THAT abandonment and forfeiture of water rights are not favored. *Sturgeon v. Brooks,* 73 Wyo. 436, 281 P.2d 675 (1955). Forfeitures must be promptly asserted, and if not asserted they are waived. *Sturgeon v. Brooks,* supra."

and ¶ 5 says:

"THAT water rights will not be set aside unless it is justified by clear and convincing evidence. *Wheatland Irrigation District v. Pioneer Canal Co.,* 464 P.2d 533 (Wyo.1970). The contestant has the burden of proving the abandonment by clear and convincing evidence. *Ramsey v. Gottsche,* 51 Wyo. 516, 69 P.2d 535 (1937)."

Referring to ¶ 4 above, where the Board cites *Sturgeon v. Brooks,* 73 Wyo. 436, 281 P.2d 675 (1955), to the effect that forfeitures are not favored in the law, we can only say that this proposition is hardly applicable here. Our concern in this appeal necessarily focuses upon a statutory interpretation question—not whether the court abhors forfeiture. We cannot call up the

---

4. Section 41–3–401(b) reads in pertinent part: " * * * The total absence of water to divert during an irrigation season precludes the in-

clusion of any period of nonuse resulting therefrom in the computation of the successive five (5) year period."

abhorrence-of-forfeiture rule in order to rescue Laramie Rivers from an abandonment of a water right in lieu of requiring that the applicable statute pertaining to abandonment be applied and given its plain English-language meaning. We are not the legislature. Indeed, we do abhor forfeitures, but it is the legislature that has established this rule for forfeiting water rights—not the court!!

The Board of Control has also misapplied the rule of *Sturgeon v. Brooks,* supra, where, in conclusion of law ¶ 4, it cites that authority for the proposition that

> "[f]orfeitures must be promptly asserted and if not asserted they are waived."

We find no language in § 41-3-401 or any other applicable statute which suggests that a petitioner's lack of promptness will become grounds for penalty at any time before the appropriator's water has been applied to a beneficial use. In any case, it hardly seems that this rule could come into play to deny *this* appellant its statutory right to file a petition for abandonment when it is remembered that the filing was made within a week or ten days from the date of the announcement that the improvements would be undertaken—two days after the commencement of the work at the site and in all events prior to the assignment of the contested water to the reservoir or to any other authorized use contemplated by Laramie Rivers' appropriation certificates.

Even if the above were not convincing for the proposition which speaks to the timeliness of the filing, *Sturgeon v. Brooks* is not authority for the Board of Control's decision.

In *Sturgeon v. Brooks,* 281 P.2d at 683–684, this court said:

> " * * * We might say at this point, plaintiff Sturgeon testified that he acquired the land on which the reservoir in question is located in 1936 or 1937. The reservoir rights in question here had not been put in use for five years previously and were not put to use until 1951 or 1952. Yet he waited sixteen or seventeen years

before bringing an action of forfeiture, and that after the defendant Brooks had twice repaired the reservoir and *had recommenced to use the water.* The testimony does not disclose the outlay, but judging from the fact that plaintiff Sturgeon had offered to contribute $500 to the repair of the dam of the reservoir, the expenditure by Brooks must have been at least substantial. Waiting sixteen or seventeen years to bring an action for forfeiture would, on its face, seem to be an unreasonable time, especially in view of the facts just stated." (Emphasis added.)

The court then went on to explain that had the reservoir water not been put to use, the result might not have been the same when we said:

> " * * * It may be conceded herein for the purpose of this case, that *if the action for forfeiture had been brought before Brooks put the reservoir again into use, the court would have been justified, if not constrained, to declare a forfeiture."* (Emphasis added.)

In *Wheatland Irrigation District v. Pioneer Canal Co.,* Wyo., 464 P.2d 533 (1970), we were later confronted with a fact situation (like the case before the court here) where a forfeiture petition was filed *before* the water had been applied to its beneficial use. There, both the Board of Control and the district court found that the Pioneer Canal Company should have a reasonable period of time to enlarge their reservoir to its appropriated size rather than abandoning the right as to any excess over its present capacity. This court reversed the district court's affirmance of the Board of Control's order and declared the excess of the right to be abandoned. Commenting on *Sturgeon v. Brooks,* we said:

> " * * * One of the questions dealt with in the case was whether or not the owner had abandoned his storage right because of the prolonged disuse of the reservoir. We held he had not for the reason no formal declaration of abandonment had theretofore been obtained from the board or the district court. It was said, how-

ever, 'that if the action for forfeiture had been *brought before Brooks* [defendant] *put the reservoir again into use,* the court would have been justified, if not constrained, to declare a forfeiture,' 281 P.2d at 684. Inasmuch as there has been no change in the statute relating to the matter since that time, see § 41–47, W.S. 1957, the rationale of the case is particularly persuasive here, and as indicated above we hold the board and the district court erred in granting Pioneer additional time within which to enlarge its reservoir." (Emphasis added.) 464 P.2d at 540–541.

We subscribe to the rule of *Wheatland Irrigation District v. Pioneer Canal Co.,* supra, as suggested in *Sturgeon v. Brooks,* supra, to the effect that § 41–3–401(a) requires forfeiture to be declared where the nonuse is shown for the statutory period and the only use which will rescue contestees from the gnashing teeth of that statute is *the use of the water*

" * * * for the beneficial purposes for which it was appropriated * * *."

Undertaking repairs before filing a petition does not prevent forfeiture. Only the use of the water will prevent a forfeiture. § 41–3–401(a), W.S.1977.

The Board further holds, as indicated above, that water rights will not be set aside except upon clear and convincing evidence, and that the contestant has the burden of proving the abandonment by clear and convincing evidence, citing *Ramsey v. Gottsche,* supra.[5]

This rule of law is hardly applicable here. As we have noted, ¶ 6 of the Board's conclusion of law says:

"THAT the Board concludes that *the abandonment was not promptly asserted* in this case and therefore, it must be denied. The contestee, *Laramie Rivers Company, had undertaken substantial work to repair and renovate the dam in order that it might store water to its*

original adjudicated capacity. This renovation work was under way at the time the petition was filed and served upon contestee and substantial progress had been made. The Board concludes that to grant the abandonment would be to deny the contestee the fruits of its efforts to repair the dam and that the forfeiture was not promptly asserted and therefore, must be denied." (Emphasis added.)

The Board's "clear and convincing evidence" ruling is hard to correlate with ¶ 6 of its conclusion of law. If the Board is holding, as ¶ 6 indicates, that the appellant's petition failed because it was not "promptly" asserted for the reason that the Laramie Rivers Company had

"undertaken substantial work to repair and renovate the dam * * * "

then the "clear and convincing" evidence rule is not applicable. What clear and convincing evidence? If the Board is talking about evidence that will or will not support whether substantial work had been accomplished, or whether the questioned water had been placed in the reservoir and from there beneficially applied to the land, then an erroneous conclusion has been reached because there seems to be adequate evidence to support both of these propositions. It does not make any difference anyway. We know when the contestant filed its petition; we know what work had been done when the filing was made; and we know the water had not been applied to beneficial use. These facts are not in dispute. To what "clear and convincing evidence" does the Board of Control refer? We really do not know, but in any case it is irrelevant.

Furthermore, we must assume that when the Board talks about "clear and convincing evidence," it does not have reference to any proof obligations bearing upon the application of water for "five (5) successive years," § 41–3–401(a), supra n. 1, because, as we have noted (see n. 3), the Board entered finding of fact ¶ 25 in which it said that this

---

5. We might say parenthetically, although the issue is not before us, that if ¶ 5 has reference to the burden to prove that water was available during the five-year period in question, this task does not fall to the contestant. *Matter of North Laramie Land Co.,* supra.

issue was not considered because it was disposing of the matter on other grounds. It follows that any reference to "clear and convincing" proof obligations cannot have relevance to the application-of-water issue under § 41–3–401(a) or the availability-of-water issue under § 41–3–401(b).

## CONCLUSION

We hold that the Wheatland Irrigation District's petition was timely filed, and the Board of Control may not, as was done in this case, circumvent the clear language of § 41–3–401(a), which provides that a forfeiture may only be avoided by application of water to beneficial use. Therefore there is left for resolution the question which asks whether the contestee has failed to use its water rights to the contested 41,100 acre feet in the way directed by the laws of this state applicable to such matters and, if such use has not been affected, whether there is a defense to such nonuse as is contemplated by law.

Reversed and remanded with directions to the district court that it remand to the Board of Control, directing that the Board make findings of fact on the basis of the evidence it had before it, and to take further evidence if necessary for purposes of determining if there had been an abandonment under the provisions of the first sentence of § 41–3–401(a), W.S.1977 and the last sentence of § 41–3–401(b), W.S.1977.