**LARAMIE RIVERS COMPANY,**
Appellant (Respondent),

v.

**WHEATLAND IRRIGATION DISTRICT,**
Appellee (Petitioner).

No. 84–52.

Supreme Court of Wyoming.

Oct. 10, 1985.

Horace M. MacMillan, II and George J. Millett of Pence & MacMillan, Laramie, for appellant.

William R. Jones of Jones, Jones, Vines & Hunkins, Wheatland, for appellee.

A.G. McClintock, Atty. Gen., John D. Erdmann, Asst. Atty. Gen., Cheyenne, for State Bd. of Control.

Before THOMAS,* C.J., and ROSE, ROONEY,** BROWN and CARDINE, JJ.

ROSE, Justice.

This appeal brings these parties before the court for the second time. See *Wheatland Irrigation District v. Laramie Rivers Company,* Wyo., 659 P.2d 561 (1983).

### Background

In the first appeal, we held that the abandonment petition of contestant Wheatland Irrigation District (sometimes referred to as Wheatland) had been timely filed— undertaking of dam repairs does not prevent forfeiture—and we remanded to the

---

* Became Chief Justice January 1, 1985.

** Chief Justice at time of oral arguments.

district court for resolution of the question which asks whether contestee Laramie Rivers Company (sometimes referred to as Laramie or Laramie Rivers) had failed to utilize its reservoir storage rights to the contested 41,100 acre-feet in Lake Hattie Reservoir according to statutory directive, and, if not, whether Laramie had a lawful excuse for such nonuse.

In reliance upon Wyoming's nonuse water-abandonment statute, § 41–3–401(a), W.S.1977,[1] Wheatland originated the action by filing a petition with the State Board of Control, seeking to abandon 41,100 of the 68,500 acre-feet of water which had been appropriated to the Laramie Rivers Company from the Laramie and Little Laramie rivers under two reservoir permits for the Lake Hattie Reservoir. The reservoir permits for the storage of 90,872 acre-feet for the appellee's Wheatland No. 3 Reservoir are junior to and downstream from Lake Hattie. It is Wheatland's contention that the statutory five successive years having passed since Laramie applied the contested water to beneficial use, the appropriation was, under § 41–3–401(a), abandoned and therefore subject to declaration of abandonment under § 41–3–401(b), W.S.1977.[2]

### Remand Proceedings

The State Board of Control, upon remand from this court, reconsidered the evidence received in the original hearing and, on August 18, 1983, ordered all storage rights in Lake Hattie Reservoir abandoned above an elevation of 7,263 feet above mean sea level. Further, the State Board of Control ordered that the Laramie Rivers Company or its successors cause a survey to be made to determine the actual capacity of Lake Hattie Reservoir below 7,263 feet and to prepare a capacity map to the satisfaction of the State Board of Control prior to May 1, 1986.

### Issues for Decision

Laramie appealed to the district court and the case was certified directly to this court, with the following issues assigned for our review:

"1. Does Wheatland Irrigation District lack standing to file a petition for partial abandonment of the storage rights held by Laramie Rivers Company in Lake Hattie Reservoir?

"2. Did the Board of Control properly comply with Wyoming law by arbitrarily disregarding the facts as to the actual amount of water available for diversion during the years in question?

"3. Did the Board of Control comply with Wyoming law in concluding that a partial abandonment of storage rights in Lake Hattie Reservoir could be based upon elevation, rather than the actual quantity of water put to beneficial use?

"4. Was the order of the Board of Control directing that all storage rights in Lake Hattie Reservoir shall be abandoned if Laramie Rivers Company fails to provide a map certifying the capacity of Lake Hattie Reservoir by May 1, 1986, and until such time that an acceptable map is provided in compliance with Wyoming law?"

1. In relevant part, § 41–3–401(a), W.S.1977, provides:
   "Where the holder of an appropriation of water from a surface, underground or reservoir water source fails, either intentionally or unintentionally, to use the water therefrom for the beneficial purposes for which it was appropriated, whether under an adjudicated or unadjudicated right, during any five (5) successive years, he is considered as having abandoned the water right and shall forfeit all water rights and privileges appurtenant thereto.  * * * "

2. Section 41–3–401(b), W.S.1977, provided:
   "When any water user who might be *affected* by a declaration of abandonment of existing water rights desires to bring about a legal declaration of abandonment, he shall present his case in writing to the state board of control. The board has exclusive original jurisdiction in water right abandonment proceedings. The board shall, if the facts so justify, refer the matter to the superintendent of the water division where the abandonment is claimed to have occurred. The total absence of water to divert during an irrigation season precludes the inclusion of any such period of nonuse resulting therefrom in the computation of the successive five (5) year period." (Emphasis added.)

## Issue No. 1—Standing

We will find that the threat of resuscitating Laramie River's abandoned water rights constitutes such abridgment of Wheatland's water rights as will provide standing to petitioner in abandonment, because, after the triggering of the injury which flows from resuscitation (i.e., reapplication to beneficial use), it is then too late for Wheatland to protect its right to the use of the contested water under our holding in *Wheatland Irrigation District v. Pioneer Canal Co.*, Wyo., 464 P.2d 533 (1970); *Sturgeon v. Brooks*, 73 Wyo. 436, 281 P.2d 675 (1955).

## Wheatland's Position

In the appeal at bar, it is the appellee Wheatland's position that the threat of the reapplication of Laramie River's abandoned storage rights to beneficial use would adversely affect Wheatland's water right which—for purposes of the case at bar—it identifies as being the uninterrupted flow of the contested water past the Lake Hattie diversion into Wheatland's No. 3 Reservoir subject only to the rights of such intermediate users as may be in priority.

In the words of its brief, Wheatland urges that it has standing

" * * * in order to protect its right to use its previously appropriated water in Wheatland Reservoir No. 3 from the injury which it would suffer were the Contestee/Appellant allowed to resuscitate the water rights which it abandoned from non-use."

## Wheatland's Resuscitation Theory

Concerning its standing to petition for abandonment under § 41–3–401(b), where the "water user" must be found to have been "affected," Wheatland argues that it is a junior downstream appropriator which is possessed of an unsatisfied water right that is being supplemented through the nonuse of Laramie River's upstream, par-

tially abandoned, senior appropriation, and, therefore, the threat of the reassignment of the contested water to beneficial use causes Wheatland to become such an "affected" water user as is contemplated by § 41–3–401(b).

Essential to the understanding of contestant's theory is a continuing awareness of the provisions of § 41–3–401(a) and (b). Particularly is it important to remember that § 41–3–401(a) provides that contestee's nonuse for the statutory period creates a condition which the legislature has described as *"having abandoned the water right"* (emphasis added). Section 41–3–401(b) then explains who it is that will be permitted to take advantage of the "abandoned * * * water right"—namely, *"any water user who might be affected"* (emphasis added).

■ Where standing is in issue and nonuse is alleged, Wheatland interprets these statutory provisions to say that, even though—through nonuse—Laramie has factually abandoned the water right in question, prior to a declaration of abandonment it nevertheless retains "resuscitation"[3] privileges which contemplate that the abandoned water right may be retrieved and revitalized through reapplication to such beneficial use as is contemplated by the contestee's original appropriation authority. In support of this automatic abandonment theory, with its attendant "resuscitation" properties, Wheatland remembers *Sturgeon v. Brooks*, supra, and *Wheatland Irrigation District v. Pioneer Canal Co.*, supra. The lesson of these opinions is that nonuse for the statutory period renders a right forfeited, but, if the petition for abandonment is not filed until after beneficial use is resumed, forfeiture of the water right will not be declared.

We discussed *Sturgeon* and *Wheatland Irrigation District* in our first opinion and, in light of the importance of these cases to an understanding of the appellee's theory

---

**3.** A word which is frequently relied upon by the appellee in describing the remaining right or privilege of a contestee following such five-year nonuse abandonment as is contemplated by

§ 41–3–401(a). Webster's Third New International Dictionary gives as one of its definitions of "resuscitate": "to revive from apparent death or unconsciousness."

of standing in this appeal, what we said there bears repeating. In *Wheatland Irrigation District v. Laramie Rivers Company*, 659 P.2d at 566–567, we said:

"In *Sturgeon v. Brooks*, 281 P.2d at 683–684, this court said:

" '* * * We might say at this point, plaintiff Sturgeon testified that he acquired the land on which the reservoir in question is located in 1936 or 1937. The reservoir rights in question here had not been put in use for five years previously and were not put to use until 1951 or 1952. Yet he waited sixteen or seventeen years before bringing an action of forfeiture, and that after the defendant Brooks had twice repaired the reservoir and *had recommenced to use the water*. The testimony does not disclose the outlay, but judging from the fact that plaintiff Sturgeon had offered to contribute $500 to the repair of the dam of the reservoir, the expenditure by Brooks must have been at least substantial. Waiting sixteen or seventeen years to bring an action for forfeiture would, on its face, seem to be an unreasonable time, especially in view of the facts just stated.' (Emphasis added.)

"The court then went on to explain that had the reservoir water not been put to use, the result might not have been the same when we said:

" '* * * It may be conceded herein for the purpose of this case, that *if the action for forfeiture had been brought before Brooks put the reservoir again into use, the court would have been justified, if not constrained, to declare a forfeiture.*' (Emphasis added.)

"In *Wheatland Irrigation District v. Pioneer Canal Co.*, Wyo., 464 P.2d 533 (1970), we were later confronted with a fact situation (like the case before the court here) where a forfeiture petition was filed *before* the water had been applied to its beneficial use. There, both the Board of Control and the district court found that the Pioneer Canal Company should have a reasonable period of time to enlarge their reservoir to its appropriated size rather than abandoning the right as to any excess over its present capacity. This court reversed the district court's affirmance of the Board of Control's order and declared the excess of the right to be abandoned. Commenting on *Sturgeon v. Brooks*, we said:

" ' * * * One of the questions dealt with in the case was whether or not the owner had abandoned his storage right because of the prolonged disuse of the reservoir. We held he had not for the reason no formal declaration of abandonment had theretofore been obtained from the board or the district court. It was said, however, "that if the action for forfeiture had been brought before Brooks [defendant] put the reservoir again into use, the court would have been justified, if not constrained, to declare a forfeiture," 281 P.2d at 684. Inasmuch as there has been no change in the statute relating to the matter since that time, see § 41–47, W.S.1957, the rationale of the case is particularly persuasive here, and as indicated above we hold the board and the district court erred in granting Pioneer additional time within which to enlarge its reservoir.' (Emphasis added.) 464 P.2d at 540–541."

Accord *Horse Creek Conservation Dist. v. Lincoln Land Co.*, 54 Wyo. 320, 92 P.2d 572 (1939).

In the case at bar, the injury to the contestant's water rights—i.e., the right to have the abandoned water flow by the Lake Hattie diversion, to aid in the satisfaction of Wheatland's long-standing but unfulfilled reservoir rights—could not occur until the abandoned water rights were resuscitated (when it would then be too late for the contestant to petition in abandonment under *Wheatland Irrigation District v. Pioneer Canal Co.*, supra) unless we are prepared to say that the *threat of resuscitation* constitutes an effective abridgement of Wheatland's existing reservoir right. Wheatland puts the thought this way:

"If the Contestant was to be required to actually suffer that injury [the reapplication of water to beneficial use] prior to obtaining standing to institute this proceeding, they would have to give up their cause of action before they could assert it."

The contestant's rationale for this proposition is expressed in its brief as follows:

"If the junior water right holder waits until after the senior right is resuscitated by being once again put to use, he may no longer claim the benefit of the earlier period of non-use, no matter how extensive it was, because the subsequent reuse of the earlier right reestablishes it with all the validity it would have had, had it been continually used since its inception."

### *Laramie River's Position*

In response, Laramie Rivers says to Wheatland:

You have not identified a water right that is being abridged through refusal to abandon—you only point to a benefit from abandonment, and benefit without associated injury is insufficient to structure standing under *Platte County Grazing Association v. State Board of Control,* Wyo., 675 P.2d 1279 (1984).

More specifically, Laramie Rivers describes its position this way in its brief:

"The injury factor, stressed the Court [in Platte County Grazing Association], is the jurisdictional, statutory requirement which must be present before one appropriator can bring a petition for abandonment against the water rights of another. * * * The majority opinion of Justice Rose further explained, 'the complainant must, in order to vest the appropriate boards and courts with jurisdiction to hear his petition, *be able to allege and prove* that his water right *has been injured,* i.e., abridged by the use or misuse that the contestee makes of the water in which the contestant has a protective

interest.' *Platte County Grazing Association,* supra at 1283–1284 (emphasis added).

"Several other recent Wyoming cases reiterate the requirement that an appropriator be able to allege and prove injury to his water right in order to be vested with standing to bring an abandonment action. See, *Cremer vs. State Board of Control,* 675 P.2d 250 (Wyo.1984); *Budd vs. Bishop,* [Wyo., 543 P.2d 368 (1975)]. In Cremer, the Court discussed the general body of law regarding standing, and concluded that requiring proof of injury as a prerequisite to a complaint in abandonment was simply an application of the historic rule, 675 P.2d at 256."

Laramie Rivers, thus, relies mainly upon our decisions in *Platte County Grazing Association v. State Board of Control,* supra, and *Cremer v. State Board of Control,* Wyo., 675 P.2d 250 (1984), to defeat the petition on the grounds that Wheatland, the junior appropriator, is unable to identify a water right that will be "affected"[4]—i.e., abridged—"injured"[5] by reason of the ever-present threat of reapplication to beneficial use. Laramie goes on to argue that the only result of abandonment will be to "benefit" the Wheatland No. 3 Reservoir absent the required jurisdictional proof of injury to an existing water right. For these reasons, says the appellant, Wheatland is not possessed of standing to petition for the partial abandonment of the Lake Hattie storage rights.

In Platte County Grazing Association, we held that the junior appropriator downstream contestants lacked standing to petition under § 41–3–401(b) because the facts in that case reveal that, even though the contestee was not using the water for "the beneficial purposes for which it was appropriated" as contemplated by § 41–3–401(a) in that the senior was applying all of its appropriated water to only one-half of the land authorized by its appropriation (thereby making the contestee's water

---

4. As the word "affected" is contemplated by § 41–3–401(b).

5. As "injured" is utilized in the Platte County Grazing Association opinion.

right eligible for a declaration of abandonment), the contestant's water rights were, nevertheless, not abridged and therefore were not "affected" for standing purposes. The Platte County Grazing Association opinion was fact-oriented in the sense that the record in that case revealed that the same amount of water would return to the stream through misapplication as would have returned were the water to have been applied as contemplated by the contestee's appropriation authorization; hence—no injury to the contestant's water rights. It is, of course, conceded that the water rights of the contestant in Platte County Grazing Association would have *benefited* from a declaration of abandonment, but the contestants found it impossible to demonstrate that the use to which the contestee was putting its water was in any way abridging the water rights of the contestants. The sense of the Platte County Grazing Association holding is that standing to complain contemplates an ability to plead and prove injury to the contestant's water right. Accord *Cremer v. State Board of Control,* supra.

### Decision Concerning Wheatland's Standing

In *International Association of Fire Fighters v. Civil Service Commission of the Fire Department of the City of Cheyenne,* Wyo., 702 P.2d 1294, 1297–1298 (1985), Chief Justice Thomas, in his specially concurring opinion, summarized the law of standing when he said:

"A fundamental aspect of the doctrine of standing is that those who press an issue must allege 'a personal stake in the outcome of the controversy.' *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691,

703, 7 L.Ed.2d 663 (1962); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Village of Arlington Heights v. Metropolitan Housing Development Corporation,* 429 U.S. 252, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977). It is the personal stake in the result which guarantees a full and complete adversary presentation of the case. *Spratt v. Security Bank of Buffalo, Wyoming,* Wyo., 654 P.2d 130, 134 (1982); *In the Matter of Various Water Rights in Lake DeSmet Reservoir,* Wyo., 623 P.2d 764, 767 (1981); *Sierra Club v. Morton,* 405 U.S. 727, 731–732, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636, 641 (1972). In Wyoming this personal stake has been described as a 'tangible interest at stake.' *Cremer v. State Board of Control,* Wyo., 675 P.2d 250, 254 (1984); *Washakie County School District Number One v. Herschler,* Wyo., 606 P.2d 310, 316 (1980), cert. denied 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980). It has been our requirement that one asserting an issue be 'sufficiently affected to insure that a justiciable controversy is presented to the court.' *Cremer v. State Board of Control,* supra, 675 P.2d at 254; *Washakie County School District Number One v. Herschler,* supra, 606 P.2d at 317."

The record shows in the case at bar that, for the five years in question here, an unidentified amount of the water in contest, which might otherwise have been lawfully diverted to Lake Hattie, ran downstream where it was utilized by various appropriators, including Wheatland Irrigation District's No. 3 Reservoir.[6] That reservoir, with its 90,872 acre-feet of storage authority, has never been filled to capacity,

---

**6.** One of the appellee's witnesses testified as follows:

"A. We have used this water a number of years in the past, since '73, including '73, and it has been used on the Wheatland Irrigation Project in those years. It has, in a number of cases, sure added to the supply of water that we had to benefit the crops that we raised there. And probably if we lost that water, it would be a detriment to the crops we raise, we would have less supply.

\*  \*  \*  \*  \*  \*

"Q. \* \* \* Mr. Weber, what prompted you to initiate the abandonment proceeding against the Laramie Rivers Company? Was there any one thing in particular that prompted it? "A. One thing in particular that prompted it? The fact that it was a threat to our No. 3 reservoir is what prompted it."

including those years when at least a part of the contested Lake Hattie water was not being diverted for that reservoir's purposes. Therefore, whatever right Wheatland has to assert standing here comes out of Laramie's nonuse of its water rather than misuse or misapplication as was the case in Platte County Grazing Association. It is also conceded that Laramie Rivers' alleged nonuse resulted in a benefit to Wheatland's unsatisfied appropriation. Granting the benefit that would flow to Wheatland from a declaration of abandonment, whether the State Board of Control's refusal to declare a forfeiture would have resulted in such abridgment to its appropriation as would furnish standing to petition for abandonment is the question which must be decided in this opinion.

This turns the standing issue for this appeal into this inquiry:

Does a contestant junior downstream reservoir appropriator possess standing to bring partial abandonment under § 41–3–401(b) against a senior appropriator where the junior undertakes to establish that his appropriation is "affected" (as contemplated by § 41–3–401(b)) by the senior's failure to apply water to beneficial use for the statutory period of time under facts which show

(a) that the junior's existing water right has historically been unfulfilled by the stream flow whether the senior diverts the contested water or not, but (b) the undiverted flow of contested water will serve to more nearly approximate the fulfillment of the reservoir authority of the junior downstream appropriator?

We will hold that Wheatland is possessed of standing to petition in abandonment.

### The Standing Decision's Rationale

*To Be Affected Under § 41–3–401(b), The Abridgment Must Be To the Water Right*

■ The standing requirements of § 41–3–401(b) mandate that the petitioner must be possessed of a *water right* that is being abridged either by *misuse* (misapplication), as was the case in Platte County Grazing Association,[7] or nonuse as the junior appropriator contends here. In pursuit of the answer to the question which wants to know whether or not Wheatland was possessed of an abridged water right, we pause to reiterate that it is a sound principle of water law in this state which holds that "affected" under a statutory provision containing § 41–3–401(b) language can only pertain to an abridgment of the contestant's water right.

■ We are aware of the school of thought which holds that a water user need only show that his right will be "benefited" in order to establish standing under § 41–3–401(b). We are also aware that the legislature has amended the statutes so that any user on the system may now bring abandonment. However, this appeal is decided upon § 41–3–401(a) and (b) *before* amendment, and under these statutes and their predecessors, as well as the relevant decisions of this court, *benefit* from abandonment, without attendant injury from nonuse or misuse, is factually insufficient to establish standing to bring abandonment. Cremer v. State Board of Control, supra; Platte County Grazing Association v. State Board of Control, supra.

In denying standing in *Mitchell Irr. Dist. v. Whiting*, 59 Wyo. 52, 136 P.2d 502 (1943), where a senior downstream appropriator sought to abandon the water right of the junior upstream water user and the senior was shown to be receiving all the water to which he was entitled, we quoted from 2 Kinney on Irrigation and Water Rights, 2d ed., 1377, § 789:

" * * * 'So long as the prior appropriator obtains all the water of satisfactory quality *to the full extent of his appropriation,* he has no right to interfere with or complain of the enjoyment of the rights

---

7. Under § 41–3–401(a), the holder of an appropriation "is considered as having abandoned the water right" if he fails to use the water *"for the beneficial purposes for which it was appropriat-* ed" (emphasis added) for the five successive years contemplated by the statute. Therefore, under an appropriate fact situation, abandonment can come from misuse as well as nonuse.

of subsequent appropriators on the stream.' * * * See, also, *Clough v. Wing*, 2 Ariz. 371, 17 P. 453; *Albion-Idaho Land Company v. Naf Irrigation Company et al.*, 10 Cir., 97 F.2d 439, 444." (Emphasis added.) 136 P.2d at 508.

In *Campbell v. Wyoming Development Co.*, 55 Wyo. 347, 100 P.2d 124, 140, reh. denied 55 Wyo. 347, 102 P.2d 745 (1940), we said:

"Before a party may attack the right of another, either on constitutional or other grounds, *he must first show that he himself has a right which has been invaded* thereby. He must have an interest which is affected." (Emphasis added.)

In *Horse Creek Conservation Dist. v. Lincoln Land Co.*, 92 P.2d at 580, where the facts disclosed that the junior downstream contestant would not have received the water in issue because of the distance between the properties of the nonuser and those of the contestant, we said:

"*Finally, returning again to the opening words in the sentence last above quoted from the procedural statute, Section 122–422, supra, 'when, pursuant to the provisions of § 122–421, any water user who might be affected by a declaration of abandonment,' etc., it is manifest that the italicized word, 'affected,' is both significant and controlling. It indicates to our mind that it was not the legislative purpose to open the door to any person whomsoever to undertake proceedings to procure a declaration of abandonment. Those who are authorized to use the procedure set forth in Sections 122–422 to 122–427, W.R.S.1931, inclusive, are only those whose rights would be 'affected.'* * * * *Our statute evidently means, therefore, that if a party's water rights would be abridged in some way, i.e., changed to his disadvantage, he may*

*invoke the statutory procedure.*" (Emphasis added.) 92 P.2d at 580.

In *Hagie v. Lincoln Land Co.*, 18 F.Supp. 637, 639 (D.C.Wyo.1937), where Wyoming's abandonment statute was under consideration and the facts revealed that the junior contestant's rights were ten miles downstream from those of contestee—there being no proof that any such abandoned water would enlarge the rights or even reach the lands of the contestant—the federal district court said:

" * * * It is claimed by the defendant that the plaintiff is not legally qualified to challenge the water rights of the defendant because of the fact that he does not come within the provisions of the statute as one eligible to present a contest. Section 122–422, W.R.S.1931, provides in part: 'When, pursuant to the provisions of § 122–421, any water user who might be affected by a declaration of abandonment of existing water rights, desires to bring about a legal declaration of such abandonment, he shall present his case in writing to the board of control.'

"In respect of this statute it is urged that the plaintiff is in no wise affected through the use of water by the defendant in the manner which has been above outlined. If it be held that the plaintiff is affected through the use of water by defendant on Fox creek, ten miles below plaintiff's land under the facts in this case, it would mean that pure theory must place plaintiff in a position to become a contestant of defendant's rights. The evidence in this case from the practical standpoint shows rather conclusively that *the plaintiff's rights* could in no way be affected injuriously or otherwise by the exercise of the defendant in its claimed right of appropriation."[8] (Emphasis added.) 18 F.Supp. at 639.

In *Cremer v. State Board of Control*, 675 P.2d at 256, we concluded with these thoughts:

---

8. It is to be noted in this quote from *Hagie v. Lincoln Land Co.* that the writer of the opinion refers to plaintiff being affected (by abandonment) and "the plaintiff's rights" being affected by the abandonment. We understand that all references, in this context, are to the water rights of the plaintiff.

"We therefore reiterate the historic rule (which is nothing more than the law of standing applied to water users in an abandonment proceeding) that *an appropriator's rights are not 'affected' for the purpose of bringing abandonment unless those rights are changed to his disadvantage.* [Emphasis added.] In other words, he has to be able to show *injury.* [Emphasis in original.] A water user may not bootstrap standing for the purpose of bringing abandonment of his neighbor's water rights when the only effect of the abandonment would be to enlarge the contestant's appropriation as distinguished from protecting his right to use his previously appropriated water."

In *Platte County Grazing Association v. State Board of Control*, 675 P.2d at 1283, we reaffirmed these historic water-rights concepts when we said:

"When contemplating the meaning of § 41–3–401(b), supra, we held in the *Cremer* case that 'affected' means adversely affected—injured—it connotes a *use* which results in an abridgment of the contestant's water rights as compared to an enhancement of those rights. We said that in order that a *user* be 'affected' so as to have standing to bring abandonment, *the complaining user must be able to show that the contestee is utilizing his water to the disadvantage of the water rights of the contestant.*

"In reaching these conclusions we were merely summarizing and reiterating old and familiar rules of this court as well as rules of other courts which have been considered with approval. See *Hagie v. Lincoln Land Co.*, [supra]; *Mitchell v. Whiting*, supra; *Campbell v. Wyoming Development Co.*, [supra]; *Horse Creek Conservation Dist. v. Lincoln Land Co.*, [supra]." (Emphasis added; emphasis in original omitted.)

Therefore, when § 41–3–401(b) speaks about a "water user" who might be "affected" by the nonuse contemplated by § 41–3–401(a), it has reference to the abridgment of the water rights of a "water user." Transposed to the case at hand, this means that when a junior downstream appropriator such as Wheatland charges an upstream senior appropriator with nonuse, in order to satisfy standing requirements, the contestant must be able to show that its water right is "abridged."

### Wheatland's Water Right (For Standing Purposes)

What does Wheatland's water right consist of? The facts reveal that Wheatland's is a reservoir right authorizing certain storage capacity which is downstream from the Laramie Rivers reservoir right and junior thereto. As long as senior users on the stream, including Laramie Rivers, are applying their available entitlements to the beneficial use called for by their appropriation, this describes the totality of that right—even if it means, in Wheatland's case, that its reservoir's storage appropriations remain unfulfilled. Clearly, however, the statutes envision other options which are available to an unfulfilled junior water-rights appropriator where the upstream user fails to divert its authorized water according to appropriation authority. Particularly are these options available where a contestee's failure to divert results in the downstream contestant's fuller utilization of its water rights, and the threat of resuscitation by reapplication to beneficial use serves to jeopardize contestant's right to utilize such abandoned water for purposes of fulfilling its appropriation. Indeed, in order to establish standing, the contestant need not have suffered the ultimate abridgment which would flow from his doing nothing until the contestee reapplies abandoned water to beneficial use. Where the threat of inevitable and irretrievable injury to his water right exists, and his awaiting the falling of the axe would itself serve as the engine for foreclosing any effective effort to protect his appropriation, a junior appropriator need not await the fatal blow. He may act upon *the threat of injury* which is fashioned by the probability that the contestee will return the water to beneficial use. See *Kearney Lake Land &*

*Reservoir Company v. Lake De Smet Reservoir Company,* Wyo., 475 P.2d 548 (1970).

As we have noted, the relevant statutes provide that where the appropriator fails to *use* the water "for the beneficial purposes for which it was appropriated" (for five years), "he is considered as having abandoned the water right" (§ 41–3–401(a)) and anyone who would be "affected" by a declaration of abandonment, may, under § 41–3–401(b), present his case to the State Board of Control in pursuit of the declaration. Therefore, once senior water rights fall into the status of statutory abandonment for nonuse under § 41–3–401(a), but prior to a *declaration of abandonment* by the State Board of Control, the "injury" to a downstream junior appropriator with which § 41–3–401(b) is concerned when it provides that only "affected" water users may "present [the] case in writing," is the injury to the junior appropriator's water right that results from the ever-present possibility that the contestee may, at any time, resuscitate its abandoned water right through reapplication to beneficial use.

In the case at bar, Laramie Rivers' reservoir right is eligible for declaration of abandonment by contestant Wheatland because the threat of injury to Wheatland's reservoir right is everpresent in view of the fact that the reapplication of the abandoned water to beneficial use by Laramie Rivers would have the effect of final and ultimate deprivation of appellee's right to the contested Laramie Rivers water. This is to say that if injury for standing purposes does not ripen until the day when the necessary proof of injury may be made (which would occur at the moment when Laramie reapplied the contested water to beneficial use), it is clear that the contestant must therefore rely upon an undeclared water-right abandonment to support his standing contention. In this context, we again refer to the rules of *Wheatland Irrigation District v. Pioneer Canal Co.,* supra, and *Sturgeon v. Brooks,* supra, where we held that, even though a water right may be qualified for abandonment before beneficial use is resumed, abandonment will not be declared where beneficial use has been reinitiated prior to the filing of the petition.

With the rules of *Wheatland Irrigation District v. Pioneer Canal Co.* and *Sturgeon v. Brooks* in mind, it can be seen that the reapplication of Laramie Rivers' water to beneficial use would have the effect of depriving Wheatland of the contested reservoir storage water. However, in order to establish the abridgment which is contemplated by § 41–3–401(b), the contestant need not wait until he can no longer assert his rights.

This is the conclusion which must be reached upon any careful consideration of the nonuse standing provisions of § 41–3–401(a) and (b). It would indeed be illogical for this court to refuse to recognize a junior appropriator "injury" under facts which show the senior appropriator's five-year failure to beneficially apply water to its designated use in circumstances which reveal that the junior possessed a water right that was being satisfied, or more nearly satisfied, through the senior's failure to divert. The consequence of such a holding would be to say that the only users who have standing to assert rights under the five-year nonuse statutes are those junior downstream appropriators who are receiving *less* water than that to which they are entitled by reason of excessive and invasive use on the part of upstream appropriators. This would deny standing to junior downstream appropriators whose water rights are jeopardized by an ever-existing threat to return the contested water to beneficial use. Not only would this constitute an illogical conclusion concerning the nonuse statutes, § 41–3–401(a) and (b), but it would have the effect of refusing to interpret these statutes in accord with their plain language and public-policy purpose. We identified the public-water use policy of the state when, in *Wyoming Hereford Ranch v. Hammond Packing Co.,* 33 Wyo. 14, 236 P. 764, 766 (1925), we said:

"A fundamental principle underlying the irrigation laws is that all the available water supply should be used as far as

that is possible. Kinney on Irrigation (2d Ed.) § 1118."

The legislature has also identified the public-water policy of the state when it spoke of the "Nature of water rights and beneficial use" in § 41–3–101, W.S.1977, where it is said in relevant part:

"A water right is a right to use the water of the state, when such use has been acquired by the beneficial application of water under the laws of the state relating thereto, and in conformity with the rules and regulations dependent thereon. Beneficial use shall be the basis, the measure and limit of the right to use water at all times * * *."

### Conclusion

Where nonuse of a senior upstream appropriator's water rights is urged as grounds for abandonment under § 41–3–401(b)—the situation with which we are concerned in the case at bar—a prerequisite to standing contemplates that the contestee's undiverted water is serving contestant's unsatisfied water right. Given these circumstances, injury to contestant's water rights results from the ever-present danger and probability that the contestee will one day exercise its prerogative of resuscitating the abandoned water right by reapplication to beneficial use, thereby depriving the contestant's lawful utilization of the abandoned water. See *Wheatland Irrigation District v. Pioneer Canal Co.*, supra, and *Sturgeon v. Brooks*, supra (discussed infra). It may be parenthetically observed that, in these circumstances, "benefit" and "injury" become different sides of the same coin.

We hold that the threat of resuscitation of appellant's reservoir rights, under the facts of this case, constitutes such injury to the reservoir rights of the Wheatland Irrigation District as to furnish it with standing to petition in abandonment under and by authority of the provisions of § 41–3–401(a) and (b), W.S.1977.

### Issues 2, 3 and 4

### Actions Taken by the Board of Control on Remand

At the conclusion of our prior opinion, *Wheatland Irrigation District v. Laramie Rivers Co.*, 659 P.2d at 568, we said:

"We hold that the Wheatland Irrigation District's petition was timely filed, and the Board of Control may not, as was done in this case, circumvent the clear language of § 41–3–401(a), which provides that a forfeiture may only be avoided by application of water to beneficial use. Therefore there is left for resolution the question which asks whether the contestee has failed to use its water rights to the contested 41,100 acre feet in the way directed by the laws of this state applicable to such matters and, if such use has not been affected, whether there is a defense to such nonuse as is contemplated by law.

"Reversed and remanded with directions to the district court that it remand to the Board of Control, directing that the Board make findings of fact on the basis of the evidence it had before it, and to take further evidence if necessary for purposes of determining if there had been an abandonment under the provisions of the first sentence of § 41–3–401(a), W.S.1977 and the last sentence of § 41–3–401(b), W.S.1977."

The first sentence of § 41–3–401(a) provides that the nonuse of appropriated water for five successive years results in the abandonment of such appropriation:

"Where the holder of an appropriation of water from a surface, underground or reservoir water source fails, either intentionally or unintentionally, to use the water therefrom for the beneficial purposes for which it was appropriated, whether under an adjudicated or unadjudicated right, during any five (5) successive years, he is considered as having abandoned the water right and shall forfeit all water rights and privileges appurtenant thereto."

The last sentence of § 41–3–401(b) sets out a defense to an action for a declaration of abandonment:

"The total absence of water to divert during an irrigation season precludes the inclusion of any such period of nonuse resulting therefrom in the computation of the successive five (5) year period."

The State Board of Control, on remand, reconsidered the evidence which it had received during the original hearing in this case. Based on this review of the evidence, the State Board of Control issued its final order containing the following findings of fact:

"4. THAT the adjudicated storage capacity of Lake Hattie Reservoir is 68,500 acre-feet (60,000 acre-feet under Permit No. 1372 Res. plus 8,500 acre-feet under Permit No. 1373 Res.).

"5. On April 5, 1972, then Wyoming State Engineer, Floyd A. Bishop, imposed a storage limitation on Lake Hattie Reservoir because of concerns over the safety of the dam * * *. The amount of storage was limited to the amount of water which could be stored up to Elevation 7,263 feet above mean sea level, and was stated to be approximately 27,400 acre-feet of active storage.

"6. THAT the petition in this case seeks a declaration of abandonment as against the difference between the full storage capacity of Lake Hattie Reservoir and the storage capacity as limited by the State Engineer on April 5, 1972, (Elevation 7263 feet) which was stated to be 41,100 acre-feet (68,500 – 27,400 = 41,-100).

* * * * * *

"9. THAT the years placed in contest at the hearing were 1972, 1973, 1974, 1975 and 1979. The parties stipulated that water was unavailable for storage during 1976, 1977 and 1978.

* * * * * *

"11. THAT the evidence shows that during the years in contest (1972, 1973, 1974, 1975 and 1979), no water was stored in Lake Hattie Reservoir in excess of the State Engineer's limitation, i.e., the water level in the reservoir never came up to or rose above Elevation 7,263 feet.

"12. THAT the evidence shows that during each of the years in contest (1972, 1973, 1974, 1975 and 1979), water was available in priority for diversion into the Lake Hattie Supply Canal from the Laramie River and into the Lake Hattie Supply Canal No. 2 from the Little Laramie River over and above the amounts actually diverted by the Laramie Rivers Company.

"13. THAT had the Laramie Rivers Company diverted the full amount of water available to it each year during the times the Lake Hattie Reservoir storage rights were in priority during 1972, 1973, 1974, 1975 and 1979, the reservoir storage capacity would have been more fully utilized and water would have been stored at an elevation greater than Elevation 7,263 feet.

"14. THAT a close examination of the record in this case, the permit documents for Permit Nos. 1372 Res. and 1373 Res., and the filing maps and proofs of appropriation filed with these permits, indicates that an accurate total storage capacity for Lake Hattie Reservoir or the storage capacity at Elevation 7,263 feet cannot be determined. It appears from this examination that active storage capacity at this elevation may be considerably more than the 27,400 acre-feet referenced in the State Engineer's safety limitation order of April 5, 1972. This is also the amount referenced by the Wheatland Irrigation District in its petition for declaration of partial abandonment. * * * "

Based on these factual findings, the State Board of Control reached and entered the following conclusions of law:

"4. THAT the fact of non-use of Lake Hattie Reservoir above Elevation 7,263 feet for five successive years when water was available for diversion and storage compels the State Board of Control to declare an abandonment of all storage rights above that level, but to leave unaf-

fected the right to storage below said elevation.

"5. THAT the Board of Control is unable to determine the specific amount of storage capacity abandoned or remaining unabandoned in Lake Hattie Reservoir, or what portion is abandoned or retained under either Permit No. 1372 Res. or 1373 Res."

The order issued by the State Board of Control reads:

"IT IS HEREBY ORDERED THAT all right to store water in Lake Hattie Reservoir above the Elevation 7,263 feet above mean sea level is hereby DECLARED ABANDONED * * *.

"IT IS FURTHER ORDERED THAT the Laramie Rivers Company or its successors shall have a survey made to determine the actual capacity of Lake Hattie Reservoir below Elevation 7263 feet. A map shall then be prepared to the satisfaction of the State Board of Control. * * This map shall be prepared and submitted to the Board prior to May 1, 1986. Receipt of the map will enable the Board to amend the Lake Hattie permit or permits and to issue a supplemental order fixing the quantity of water abandoned and the quantity remaining, in acre-feet. If the map is not submitted by May 1, 1986, no further storage of water will be allowed under the appropriation until an acceptable map is submitted."

Laramie Rivers contends on appeal that the State Board of Control has not complied with this court's mandate issued in *Wheatland Irrigation District v. Laramie Rivers Co.*, supra. Specifically, Laramie Rivers asserts that the State Board of Control acted arbitrarily and capriciously when it failed to determine the actual amount of water available for diversion into Lake Hattie during the fiveyear period in question; that it violated state law when it ordered abandonment based upon elevation rather than the actual quantity of water put to beneficial use; and that it acted in excess of its authority when it ordered that all storage rights in Lake Hattie would be abandoned if the appellant-contestee failed

to provide a map certifying the capacity of the reservoir by May 1, 1986 and until such time as an acceptable map is provided.

### Availability of Water for Storage

Appellant Laramie Rivers Company contends that the state engineer's limitation order of April 5, 1972, rendered the full use of its storage appropriation an impossibility, just as if no water had been available in the stream. According to appellant, its failure to store water above 7,263 feet in elevation was neither intentional nor unintentional as required by § 41–3–401(a), but was mandated by the state engineer. Therefore, appellant concludes, the limitation order was equivalent to the total absence of water for storage above 7,263 feet and afforded appellant a defense under § 41–3–401(b) to the action for a declaration of abandonment.

We cannot agree with the premise underlying appellant's position. The limitation order itself did not prevent appellant from making full use of its water storage rights; rather, the deteriorated condition of the dam prevented the storage of water. The letter from the state engineer directing appellant to limit its use of water provides in part:

"As you know, we have been observing the condition of the dam at Lake Hattie rather closely during the past season. Erosion of the dam and deterioration of the concrete facing on the dam indicate the need for some limitations in method of operation of the reservoir during the forthcoming season. In the interests of public safety, I feel it is necessary to impose a limitation that storage of water in the reservoir shall be limited to the present elevation of approximately 7263 feet. This represents approximately 27,-400 acre feet of live storage.

"This limitation is to take effect immediately and will remain in effect until such time as a rehabilitation program has repaired the dam and outlet works to a safe and completely useable condition."

This order simply recognizes the fact that the condition of the dam precludes the safe

storage of appellant's full appropriation for Lake Hattie.

When an appropriator fails to use available water because its storage or diversion facilities have not been properly maintained, it risks losing its water rights in an action for a declaration of abandonment. In *Wyoming Hereford Ranch v. Hammond Packing Co.*, supra, we affirmed a decree of abandonment where the contestee had failed to use available water for the statutory period and

"* * * had permitted its ditches to become filled and grown up with grass and brush until they had become useless and almost obliterated." 236 P. at 766.

An appropriator has a duty to maintain its reservoir or diversion facilities in a condition which allows it to use the water available under its appropriation. Failure to do so constitutes a failure to use water for the beneficial purposes for which it was appropriated and can result in the forfeiture of the water right under § 41-3-401(a).

The fact that the state engineer in the instant case issued an order recognizing the inadequacy of appellant's storage facilities cannot shift the responsibility for appellant's nonuse of the water to the state engineer. We hold, therefore, that the limitation order did not excuse appellant's failure to fully use the water available under its appropriation and did not constitute a defense under § 41-3-401(b) to the action for a declaration of abandonment.

Appellant makes an additional argument concerning the availability of water for storage. According to appellant, the State Board of Control had an obligation to determine the exact volume of water available, but not used, for storage during the years in contest and to declare appellant's water rights abandoned only to that extent.

Our statutes, however, do not envision a piecemeal abandonment of water rights based on the quantity of water actually available for diversion. Under § 41-3-401(a), the failure to use water when available can result in the forfeiture of *"all*

water rights and privileges appurtenant" (emphasis added) to an appropriation. The only defense to such forfeiture proceedings, where nonuse of water is established for five successive years, is proof by the contestee of "[t]he *total* absence of water to divert during an irrigation season." (Emphasis added.) Section 41-3-401(b); *Matter of North Laramie Land Company*, Wyo., 605 P.2d 367 (1980); *Yentzer v. Hemenway*, Wyo., 440 P.2d 7 (1968). Thus, a proper decree of abandonment is not limited by the actual quantity of water available for diversion, as appellant suggests, but may dispose of an entire appropriation where the contestee made no use of the water and failed to show that no water was available.

In the case at bar, appellee Wheatland Irrigation District sought a declaration of abandonment as to appellant's rights to store water in Lake Hattie above an elevation of 7,263 feet. Appellee stated the storage capacity above 7,263 feet to be 41,100 acre-feet. Appellant presented no evidence of the total absence of water for storage above that elevation during the five years in contest. In fact, appellant's engineer established that in each year water was available for storage above 7,263 feet, but that such water was allowed to pass by the diversion structures. Accordingly, Laramie Rivers' storage rights to that volume of appropriated water in excess of the reservoir capacity at 7,263 feet in elevation, but not more than the 41,100 acre-feet indicated in the petition, were subject to a declaration of abandonment.

*Volume of Water Stored*

We agree with appellant that the appellee-contestant, Wheatland Irrigation District, bore the burden of establishing the actual volume of water in Lake Hattie represented by an elevation of 7,263 feet. Proof of such storage volume determines the extent to which appellant failed to use its appropriated water, which figure, in turn, identifies the portion of appellant's storage rights which are subject to a declaration of abandonment. Appellee, how-

ever, did not establish whether or to what extent Laramie Rivers failed to use the 41,100 acre-feet of water in contest, and the State Board of Control tied its abandonment order to elevation:

"IT IS HEREBY ORDERED THAT all right to store water in Lake Hattie Reservoir above the Elevation 7,263 feet above mean sea level is hereby DECLARED ABANDONED * * *."

Because this order purports to abandon appellant's water rights to an undetermined extent, the State Board of Control had no authority to issue it.

▬▬▬ Appellant has a vested property interest in its adjudicated rights to store 68,500 acre-feet of water in Lake Hattie Reservoir each irrigation season. See *Quinn v. John Whitaker Ranch Co.,*. 54 Wyo. 367, 92 P.2d 568 (1939); *Enterprise Irr. Dist. v. Willis*, 135 Neb. 827, 284 N.W. 326 (1939). As long as appellant used this water for the beneficial purposes for which it was appropriated, the underlying storage rights were not subject to abandonment. Section 41–3–401(a). Therefore, to declare a *partial* abandonment of these rights, the State Board of Control first had to determine the actual volume of water which appellant had properly used. Appellant stood to lose in these proceedings only its rights to that volume of appropriated water in excess of the amount used.

The State Board of Control admitted its inability to determine the specific volume of water actually and properly used by appellant during the years in contest. However, the State Board of Control attempted to resolve this problem by declaring abandoned all right to store water above 7,263 feet in elevation and by ordering appellant to prepare a contour map from which a more definite order might issue.

▬▬▬ The abandonment order, as it now stands, is meaningless. It does not, and cannot, reveal how much of the water right appellant lost and how much it retained. To know these figures, the State Board of Control needed a contour map of the floor of the reservoir which would have permit-

ted the calculation of the volume of water stored by appellant during the years in contention. The difference between the volume actually stored in the reservoir at 7,263 feet and the amount of appellant's total appropriation constituted the portion of appellant's storage rights which were subject to abandonment. Instead of making these precise determinations necessary to a valid abandonment order, the State Board of Control issued an order which leaves Laramie Rivers with unknown water rights, with rights subject to change as the reservoir floor changes, and with a consequent impairment of its ability to engage in its business of apportioning water among its members. Such order abridges appellant's vested water rights without a proper factual basis and will not be allowed to stand.

▬▬▬ Furthermore, the State Board of Control cannot compensate for these deficiencies in proof by ordering the contestee Laramie Rivers to furnish the needed data. The burden of proving nonuse of appropriated water in abandonment proceedings rests on the contestant. *Ramsay v. Gottsche*, 51 Wyo. 516, 69 P.2d 535 (1937). The State Board of Control acted impermissibly when it shifted this duty to Laramie Rivers by ordering the preparation of the contour map needed to establish the capacity of the reservoir below 7,263 feet.

▬▬▬ In its brief, the State Board of Control contends that it needs a contour map of the floor of Lake Hattie Reservoir for administrative purposes, and that appellant should be required to furnish such map regardless of whether the abandonment portion of the order is upheld. We can understand the State Board of Control's need for the information a contour map of the reservoir would afford. However, we find that the sanction of complete withdrawal of appellant's water rights for failure to prepare the map constitutes an abuse of the State Board of Control's discretion, where appellant holds adjudicated rights obtained in apparent compliance with requirements existing at the time.

We reverse the State Board of Control's order of abandonment, and remand this case for purposes of furnishing appellee with an opportunity to establish the elements necessary for a meaningful order of partial abandonment.

ROONEY, Justice, specially concurring, with whom CARDINE, Justice, joins.

Although I believe appellee has the standing required to institute abandonment proceedings, I do not agree with the reasoning by which the majority opinion finds such standing. The majority opinion does so because there is a "threat of resuscitation," thus causing injury to appellee's "water rights—i.e., the right to have the abandoned water flow by the Lake Hattie diversion, to aid in the satisfaction of Wheatland's long-standing but unfulfilled reservoir rights— * * *."

My disagreement with this reasoning is twofold:

1. Appellee's water rights do not encompass appellee's right to use appellant's abandoned water until the abandonment is adjudicated. Section 41–3–401, W.S.1977,[1] states that, when conditions for an abandonment occur, the water right is "considered" to be abandoned, but it then speaks of the procedure for "legal declaration of abandonment" and of notice to holders of water rights "sought to be abandoned," and a hearing to determine the fact of abandonment. The very fact that abandonment proceedings can be forestalled after the five-year interval by reactivating (resuscitating) its use evidences the continued existence of the right until adjudication of abandonment. *Wheatland Irrigation District v. Laramie Rivers Company,* Wyo., 659 P.2d 561 (1983); *Wheatland Irrigation District v. Pioneer Canal Co.,* Wyo., 464 P.2d 533 (1970); *Sturgeon v. Brooks,* 73 Wyo. 436, 281 P.2d 675 (1955); *Horse Creek Conservation Dist. v. Lincoln Land Co.,* 54 Wyo. 320, 92 P.2d 572 (1939).

2. The "threat" of reactivation (resuscitation) is present on the day after the five successive years of nonuse. To say that it triggers standing is redundant. The standing occurs without any "threat" as soon as the five years elapse if the other requirements for standing are present.

I find standing on the part of appellee from the facts that (1) the five successive years of nonuse had elapsed when the abandonment proceedings were instituted, (2) appellee presented the matter to the Board of Control in a timely fashion, and (3) appellee was a water user who "might be affected" by a declaration of abandonment of appellant's water rights. Appellee is a junior appropriator to appellant, and appellee's rights have regularly not been fulfilled.

The parties and the majority seem to have trouble with the existence of the requirement that appellee water user "might be affected" in view of some of our holdings. I do not. I do not believe that we have changed the historic position on this point. Before explaining my understanding of the law as set forth in previous holdings of this court, some concerns

---

1. Section 41–3–401, W.S.1977, read in pertinent part, as of the time controlling this case, as follows:

"(a) Where the holder of an appropriation of water from a surface, underground or reservoir water source fails, either intentionally or unintentionally, to use the water therefrom for the beneficial purposes for which it was appropriated, whether under an adjudicated or unadjudicated right, during any five (5) successive years, he is considered as having abandoned the water right and shall forfeit all water rights and privileges appurtenant thereto. * * *

"(b) When any water user who might be affected by a declaration of abandonment of existing water rights, desires to bring about a legal declaration of abandonment, he shall present his case in writing to the state board of control. The board has exclusive original jurisdiction in water right abandonment proceedings. The board shall, if the facts so justify, refer the matter to the superintendent of the water division where the abandonment is claimed to have occurred. The total absence of water to divert during an irrigation season precludes the inclusion of any such period of nonuse resulting therefrom in the computation of the successive five (5) year period."

should be noted which form a background for our efforts to reach a just and fair conclusion in such cases.

The decision in *State of Nebraska v. State of Wyoming*, 325 U.S. 589, 65 S.Ct. 1332, 89 L.Ed. 1815 (1945), as it pertains to abandonment actions, must be kept in mind. The water involved in an abandonment must be shown to be useable under another adjudication. A new lawsuit with another state as a result of changes since 1945 may not be to the benefit of this state.

The Board of Control has the duty to regulate and administer the use of the state's water. It can bring an abandonment action in its own right. Substantive rights of citizens should not be lost because of failure to properly administer to the several water rights. The courts cannot make legal the "stealing" of water beyond one's water rights or the misapplication of a water right.

Finally, a specific concern with standing in abandonment proceedings can be illustrated: A's water right is prior to B's water right; B's is prior to C's; C's is prior to D's; and D's is prior to E's. Each has a right to ten cubic feet per second from the stream. There is normally only thirty-five cubic feet per second (including return flow, etc.) for supply in the stream. B does not use five cubic feet per second for five consecutive years. Our holdings have refused to find A sufficiently "affected" to bring abandonment against B. He gets his water first. Whether or not B takes his full allotment does not "affect" A's water right. Although C's water right is junior to B's, his appropriation is not normally

affected since he has a call on ten cubic feet per second of water in a thirty-five cubic feet per second stream with only a twenty cubic feet per second call ahead of him. Our holdings would have him carry the burden of showing an effect on him of the abandonment. The burden would be much easier for D, and since E can definitely show an *unfulfilled* appropriation, his standing would be apparent.

The parties and the majority concern themselves with the use of the words "injury" and "benefit" as they pertain to the word "affected" in § 41–3–401, W.S.1977 (see fn. 1). Although "injury" and "benefit" are not synonymous, they mean the same thing as far as result is concerned in the context of their use and of the use of the word "affected" in the statute. When one would be benefited by the abandonment of a water right under the statute, he would be injured if the right is reactivated and not abandoned. Conversely, if one would be injured by failure to abandon a water right, whereby it is reactivated, he would be benefited by the abandonment. It makes no difference whether the result is described as "might be affected" or as "might be benefited" or as "might be injured." [2]

The facts of recent cases have caused language therein to emphasize the injury aspect of the abandonment on the contestor, but the thrust of the holding in such cases has been directed more at the word "might" in the phrase "might be affected," and such holdings simply require that the injury or benefit *be direct* and not speculative or probable. Almost anyone making any use of water in the state of Wyoming

---

**2.** Section 41–3–401(b), W.S.1977 (fn. 1) was amended, effective May 23, 1985, to change (among other things) the language from "when any water user who might be affected by a declaration of abandonment" to "when any water user who might be benefitted by a declaration of abandonment * * * or who might be injured by the reactivation of the water right," and the amendment also added the following to the subsection:

"(b) * * * The following persons have standing to petition the state board of control to declare the abandonment of existing water rights under this section:

"(i) Any person who has a valid adjudicated water right or is the holder of a valid permit from the same source of supply which is equal to or junior in date of priority to the right for which abandonment is sought; or

"(ii) The holder of a valid water right entitled to surplus water under W.S. 41–4–318 through 41–4–324, petitioning to abandon a water right from the same source of supply if the right sought to be abandoned has a priority date of March 1, 1945, or earlier."

That said in this dissent is not advisory with reference to the consistency and constitutionality of § 41–3–401(b)(i) and (ii), W.S.1977 (Cum. Supp.1985).

"might" be "affected," "injured" or "benefited" in some way by an abandonment of a water right. Our holdings limit the availability of the abandonment procedure to those to be directly affected by the result.

In *Platte County Grazing Association v. State Board of Control*, Wyo., 675 P.2d 1279 (1984), the petitioners in abandonment proceedings were junior in appropriation to the respondents. The petitioners failed to show a direct injury to their water rights if the petition was not granted, i.e., they failed to show a direct benefit if the petition was granted. The failure to make a similar showing by the junior appropriator existed in *Budd v. Bishop*, Wyo., 543 P.2d 368 (1975), although the primary concern was the constitutionality of the surplus water legislation. *Cremer v. State Board of Control*, Wyo., 675 P.2d 250 (1984) also concerned the surplus water legislation and the effect it had on the appropriation date of the water right to which the surplus water right was appurtenant. We held that A, with an appropriation senior to B, could not use his statutory surplus water right of March 1, 1945, to establish a junior position as to B for the purpose of an abandonment proceeding. Again, we found any injury or benefit to the senior appropriator to be other than direct. And we recognized the surplus water legislation to concern *surplus* water [3], and its relationship to the result of the holding in *State of Nebraska v. State of Wyoming*, supra. We concluded at pages 257–258 of *Cremer v. State Board of Control*, supra:

> "We hold, then, that the surplus water law does not authorize its utilization for the purpose of bestowing junior appropriator standing upon a base right senior appropriator such as Schmid, Inc. in order that such senior appropriator may establish that he is 'affected' within the purview of the abandonment statute. This holding contemplates these proposi-

tions: First, the base and surplus water rights of Schmid, Inc. are not being abridged by the appellants' utilization of the water contemplated by their corresponding appropriations. Secondly, it would be necessary to abandon the appellants' base rights in order to effect abandonment of their surplus water rights, and the surplus water law (§ 41–4–324, supra) prohibits its utilization for the purpose of taking or diverting other than surplus water."

In short, I find nothing in our previous opinions inconsistent with the basis set forth above and upon which I concur with the result reached by the majority opinion. Appellee was a junior appropriator to the water user against which the abandonment proceedings were instituted. Appellee's appropriation has not been fulfilled. Thus, he can show a direct injury should his abandonment petition be denied, or, said another way, he can show a direct benefit if the petition is granted.

---

3. The establishment of a surplus water right by the legislature in 1945 concerned water in a drainage system which is

> " * * * at any time in excess of the total amount required to furnish to all existing appropriations from said stream system the maximum amount of water for which all said

appropriations have been granted, whether by permit or by adjudicated decree as of March 1, 1945." § 41–4–318, W.S.1977.

It granted a surplus water right to the extent of one cubic foot per second for each seventy acres to lands having pre-March 1, 1945 water rights.